## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**PAUL NICKLEN and**
**CRISTINA MITTERMEIER,**

*Plaintiffs*,

v.                                                    **Case 1:20-cv-10300-JSR-SN**

**SINCLAIR BROADCAST GROUP, INC.,**      **DEMAND FOR JURY TRIAL**
**WCWN LICENSEE, LLC (d/b/a WCWN LLC;**
**d/b/a WCWN; d/b/a CW15 Albany), and others**
**similarly situated as WCWN LICENSEE, LLC,**
**WCWN, LLC.,**
**HEARST COMMUNICATIONS INC.,**
**MASHABLE, INC.,**
**THEHUFFINGTONPOST.COM INC.,**
**BUZZFEED, INC.,**
**VERIZON MEDIA INC.,**
**OATH, INC.**
**(d/b/a Yahoo!),**
**GATEHOUSE MEDIA, LLC,**
**GANNETT CO., INC.**
**(d/b/a USA Today),**
**PHOENIX NEWSPAPERS INC.**
**(d/b/a The Arizona Republic),**
**DETROIT FREE PRESS, INC.**
**(d/b/a Detroit Free Press),**
**QUARTZ MEDIA, INC.,**
**IHEARTMEDIA + ENTERTAINMENT, INC.,**
**IHEARTMEDIA, INC.,**
**ADVANCE PUBLICATIONS, INC.,**
**CONDE NAST ENTERTAINMENT, LLC**
**(d/b/a Teen Vogue),**
**JCK LEGACY COMPANY**
**(f/k/a The McClatchy Company)**
**(d/b/a The Kansas City Star),**
**MIAMI HERALD MEDIA COMPANY,**
**COLUMBUS LEDGER-ENQUIRER, INC.,**
**T&R PRODUCTIONS, LLC**
**(d/b/a RT Network),**
**G/O MEDIA, INC.**
**(d/b/a The Root),**
**IBT MEDIA INC.**
**(d/b/a International Business Times),**

**CBS INTERACTIVE INC.**
**(d/b/a CBS News; d/b/a Popculture.com),**
**TEGNA, INC.,**
**WKYC-TV, LLC,**
**WFAA-TV, INC.,**
**PACIFIC AND SOUTHERN, LLC**
**(d/b/a WXIA),**
**THE DAILY CALLER, INC.,**
**WORLDWIDE MEDIA SERVICES GROUP**
**INC.**
**(f/k/a American Media, Inc.)(d/b/a The**
**Adventure Sports Network),**
**A360 MEDIA LLC,**
**TEN: PUBLISHING MEDIA, LLC,**
**(d/b/a The Adventure Sports Network),**
**HEARST PROPERTIES INC.**
**(d/b/a KCCI, WESH, WLKY, WMTW,**
**WMUR, WPBF, and WXII),**
**HEARST STATIONS INC.**
**(d/b/a d/b/a KMBC, and KSBW),**
**HEARST TELEVISION INC.**
**(d/b/a (d/b/a KCRA and WBAL),**
**OHIO/OKLAHOMA HEARST TELEVISION**
**INC. (d/b/a KOCO),**
**JACKSON HEARST TELEVISION INC.**
**(d/b/a WAPT),**
**WJCL HEARST TELEVISION LLC**
**(d/b/a WJCL),**
**WVTM HEARST TELEVISION, Inc.,**
**SOME SPIDER, INC.**
**(d/b/a ScaryMommy.com),**
**UPROXX, LLC.,**
**WARNER MEDIA, LLC, and**
**PLANK, LLC**
**(d/b/a Patch Media),**

*Defendants.*

## AMENDED COMPLAINT – CLASS ACTION

Plaintiffs respectfully amend their complaint and pursuant to Fed. R. Civ. P. Rule 23, state

as follows:

## I.  INTRODUCTION

1.      This is a case about willful copyright infringement by numerous for-profit media publishers of a "starving polar bear" video[1] (the "Video") captured by Plaintiff Paul Nicklen, and one photograph[2] (the "Photo") captured by Plaintiff Cristina Mittermeier of the same subject matter, in the moments before the starving bear passed away.  Plaintiffs risked life and limb to capture the rare video footage that was viewed by millions worldwide and licensed by numerous entities throughout the world such as *The New York Times*, *The Washington Post*, and FoxNews.com.  Licensees of the Video, of which there were nearly two dozen entities, purchased valid licenses for as much as $4,000.00.  Corporate entities that neither secured a license nor have a valid defense are being sued either individually or as part of a Defendant class described below pursuant to FRCP 23.

2.      Plaintiff Paul Nicklen is an iconic, renowned Canadian photographer, filmmaker and marine biologist. Nicklen's work is regularly featured in National Geographic Magazine, the New York Times, and many other publications with a global reach.  He has received numerous international awards for his work including six (6) with World Press Photo, three (3) with Pictures of the Year International, ten (10) in the BBC Wildlife Photographer of the Year competition, and in 2012 Mr. Nicklen was the inaugural recipient of the Biogems Visionary Award from the National Resources Defense Counsel.  Nicklen is also a National Geographic Fellow and the cofounder and Director of conservation group, SeaLegacy.  Nicklen has almost 7 million Instagram followers on his public profile, https://www.instagram.com/paulnicklen/.

---

[1] See the Video at: https://www.instagram.com/p/BcU-6PsAoIp/
[2] See the Photo at https://www.instagram.com/p/BcU_8c8FDA8/

3.      In addition to being one of the world's most acclaimed nature photographers, Nicklen is a sought-after speaker, a TED Talks legend and author.  In the past two decades, Nicklen has collaborated with scientists, filmmakers, conservationists and explorers to create awareness and inspire action for global issues such as climate change.  Nicklen has a web site that receives inquiries for licensing, speaking, film and photography projects at https://paulnicklen.com/ and, for a limited time, he contracted with Caters News Agency for licensing of the Video.  Caters has an ongoing obligation to refer all licensing inquiries for the Video directly to Nicklen at this time.

4.      Plaintiff Cristina Mittermeier is an acclaimed Mexican photographer and filmmaker that often collaborates with Plaintiff Nicklen on capturing rare, wildlife images and videos throughout the world in some of the harshest, almost inaccessible regions on planet Earth. Mittermeier's work is regularly featured in *National Geographic Magazine*, *Time* magazine, and numerous other global publications.  She has received numerous international awards for her work including the Mission Award from the North American Nature Photography Association (NANPA), the Smithsonian Conservation Photographer of the Year Award, among many others and has been recognized as one of the World's Most Influential Outdoor Photographers by *Outdoor Magazine*.  Mittermeier was named one of *National Geographic*'s 2018 Adventurers of the Year. She is a member of the World Photographic Academy, a Sony Artisan of Imagery, and co-founder and Managing Director of conservation group, SeaLegacy, along with Nicklen. Mittermeier has 1.4 million followers on her public Instagram account, https://www.instagram.com/mitty.   Mittermeier also licenses her work and invites inquiries at https://cristinamittermeier.com/contact/.

5.       Plaintiffs amend their lawsuit and pursuant to Fed. R. Civ. P. 23, allege a

Defendant class related to the Video only.  This procedural amendment for a Defendant class

generally involves a common set of operative facts and the Copyright Act, and which this dispute

can be resolved by the Court in one-stroke for liability, one-stroke for common defenses, if any,

available to Defendants and one-stroke for a damages amount for a finding for each

infringement.  As background, the factual allegations common to each infringement of the Video

are:

      a.    On December 5, 2017, Plaintiff Nicklen posted his copyrighted Video

depicting a starving polar bear in the Canadian Arctic in July 2017 to his

public Instagram and Facebook accounts with an explicit written notice in the

caption directing prospective licensees of the Video to contact Caters News

Agency, Plaintiff Nicklen's agent for the Video at that time, to obtain a

license;

      b.    On December 7, 2017, *National Geographic*, one of Plaintiff Nicklen's

regular video and photograph licensees, published an edited version of the

Video, that included text throughout its duration, and published on its website

accompanying an article about Plaintiff Nicklen's experience making the

Video, quoting him directly from an interview, and the plight of the world's

polar bears in the face of global warming;[3]

      c.    Between December 8, 2017 and December 13, 2017, hundreds or perhaps

thousands of online publishers (all operating through various companies)

displayed the Video in posts that purported to comment on the Video's "viral"

---

[3] *Available at*: https://www.nationalgeographic.com/news/2017/12/polar-bear-starving-arctic-sea-ice-melt-climate-change-spd/ (See also Ex. 6).

nature.  In reality, these posts were little more than "cut and paste jobs" that used slightly edited or completely verbatim portions of the original captions accompanying Plaintiff Nicklen's Video on his Facebook and Instagram accounts and/or the text of the *National Geographic* article.  None of the Defendants' posts displaying the Video contained text that had any meaningful transformative value.  Moreover, while nearly every Defendant incorporated the exact same segments of text from the *National Geographic* article, few used the *National Geographic* video.  Instead, most Defendants embedded the Video Plaintiff Nicklen posted to his Instagram account just days before, despite the explicit licensing notice in its caption.  At least four entities embedded Plaintiff Mittermeier's Photo to illustrate the article.

d.  No Defendant paid Nicklen a licensing fee for the Video before they chose to publish it.

6.  Facebook, Inc., through its counsel, stated in open court on December 1, 2020 in a discovery conference in *Sinclair v. Mashable, Inc.* that Instagram, wholly owned by Facebook, has never once given an API publisher user a license to embed a photo or video from another public user's Instagram account: "Facebook is free to, under its policies as Judge Wood noted, to grant such sublicenses [to videos or photos on Instagram], but they did not do that. And they did not do that for anybody and the anybody would, of course, then include Mashable in this situation."  See *Sinclair v. Mashable*, (18-cv-790), Tr. 8:24 to 9:14 (Dec. 1, 2020) attached as Ex. 1.  This "anybody" also includes every Defendant in this case and every publisher that has ever used the Instagram or Facebook API to embed photos or videos.

7.     This complaint arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq. (the "Copyright Act").

8.     Plaintiffs separately allege that each Defendant is liable for direct and willful copyright infringement of Plaintiff's respective works in violation of 17 U.S.C. §§ 106 and 501.

## II. PARTIES

9.     Plaintiff Paul Nicklen ("Nicklen" or "Plaintiff Nicklen") is a resident of and domiciled in Canada.

10.    Plaintiff Cristina ("Mittermeier" or "Plaintiff Mittermeier") is a resident of and domiciled in Canada.

11.    Defendant Sinclair Broadcast Group, Inc. ("Sinclair"), is a Maryland corporation located at 10706 Beaver Dam Road, Hunt Valley, MD 21020, and has a wholly owned entity that has customers in this district, engages in media business in this district, through its corporate actions and corporate conduct and has purposefully availed itself of the privileges of conducting business in this district.  See Exhibit 2 for list of Sinclair owned entities that likely infringed on the Video.

12.    Defendant WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) is a Maryland company with its principal place of business in Schenectady, New York.  Defendant WCWN purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by broadcasting to cable television subscribers in Dutchess County, New York through cable TV carriers such as Spectrum Cable. (See Exhibit "3.").

13.    Defendant WCWN LLC ("WCWN") is a Delaware company that may have been the operating entity for WCWN Channel 13, and may have been replaced by Defendant WCWN Licensee, LLC as the operating entity for this station and the web site where the Video was

embedded.  Defendant WCWN purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by broadcasting to cable television subscribers in Dutchess County, New York through carriers such as Spectrum Cable.

14.     Defendant Hearst Communications Inc. ("Hearst"), is a Delaware corporation with its principal place of business in the district.  Hearst owns and operates numerous television and print media entities.

15.     Defendant Mashable, Inc. ("Mashable") is and was at all relevant times an active foreign business corporation duly existing under the laws of the state of New York, with its principal place of business at 114 Fifth Avenue, 15th Floor, New York. NY 10011, operating a commercial website at www.mashable.com.  Mashable is wholly owned, is partially controlled by, and takes direction from Ziff Davis LLC as to licensing of copyrighted materials such as Plaintiffs.

16.     Defendant TheHuffingtonPost.com, Inc. is a Delaware corporation ("HuffPost"), with its principal executive office at 770 Broadway, New York, New York 10003.  Its registered agent is CT Corporation System, 28 Liberty Street, New York, New York 10005-0000.

17.     Other corporate defendants related to claims against HuffPost (the "HuffPost Defendants") include Defendant BuzzFeed, Inc., (a Delaware corporation with its principal place of business at 111 E. 18th Street 13th Floor New York, New York 10003) which has been named because it has a pending acquisition for Defendant TheHuffingtonPost.com, Inc. from Defendant Verizon Media Inc., also named as part of this transaction.  Verizon Media is a Delaware Corporation, with its registered agent at Oath (Americas) Inc., 28 Liberty Street, New York, New York 10005, with principal place of business at 770 Broadway, New York, New York 10003.

Oath (Americas) Inc. is a Maryland Corporation located at 28 Liberty Street, New York, New York 10005, with principal place of business at 770 Broadway, New York, New York 10003.

18.     Defendant Oath, Inc. (d/b/a Yahoo!) is a Delaware corporation and Yahoo! Inc. (formerly the entity that operated the Yahoo.com web site) that was absorbed in an acquisition in 2017.  Oath, Inc. was acquired by and is now owned by Defendant Verizon Media, Inc., which has its principal office in New York and can be served as the address noted above.  Verizon Media may be the actual party in interest here that operates the Yahoo! brand and the yahoo.com web site.[4]

19.     Defendant Gatehouse Media LLC ("Gatehouse Media") is a Delaware company that operates in New York and can be served at C/O Corporation Service Company, 80 State Street, Albany, New York 12207-2543.  Gatehouse Media acquired Defendant Gannett Co. Inc. (d/b/a USA Today)("Gannett Co.") in 2019 during the alleged infringements period described below for each defendant. Gannett Co.'s headquarters is at 7950 Jones Branch Drive McLean, VA 22107-0150.  Gannett Co. requires users of its web site(s) to be bound by the laws of New York.[5] USA Today operates and conducts business in the district, including employees working in New York, thus availing itself to the district.  USA Today likely also has customers that reside in New York.

20.     Defendant Phoenix Newspapers, Inc. (d/b/a The Arizona Republic) ("The Arizona Republic") has a principal place of business at 3800 N Central Ave Suite 460, Phoenix, AZ 85012. Its agent for service is CT Corporation System, 3800 N. Central Ave Suite 460, Phoenix, AZ 85012.  The Arizona Republic likely has customers that reside in New York, availing itself to the district.

---

[4] https://www.verizonmedia.com/policies/us/en/verizonmedia/terms/otos/index.html
[5] https://www.gannett.com/terms-of-use/

21.     Defendant Detroit Free Press, Inc. ("Detroit Free Press") has a principal place of business located at 160 W Fort St, Detroit, MI 48226 and can be served at CSC-Lawyers Incorporating Service (Company), 601 Abbot Road, East Lansing, MI 48823.  It is owned and controlled by Gannett Co. and/or Gatehouse Media. Detroit Free Press likely has customers that reside in New York, availing itself to the district.

22.     Defendant Quartz Media Inc. is a Delaware corporation, has its principal place of business at Quartz Media, Inc., 675 Avenue of the Americas, Suite 41, New York, NY 10010, and can be served at Corporation Service Company, 80 State Street, Albany, New York, 12207-2543. It may have owned by Defendant American Media, Inc. during the infringement period.

23.     Defendant iHeartMedia + Entertainment, Inc. ("iHeartMedia") has its principal place of business at 32 Avenue of the Americas, Floor 2, New York, NY 10013 and can be served at CT Corporation System, 28 Liberty Street, New York, New York 10005.  Defendant iHeartMedia, Inc. has also been named and its principal place of business is at 20880 Stone Oak Pkwy., San Antonio, Texas 78258.  iHeartMedia's main website states that the Federal courts located in New York County, New York are proper for personal jurisdiction for any cause of action arising out of the use of the website.[6]  Additionally, iHeartMedia has subscribers/customers in New York City, availing itself to this district.

24.     Defendant Advance Publications, Inc. ("Advance") is a New York Corporation with its principal place of business at 950 Fingerboard Road, Staten Island, New York 10305, and can be served at Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.  Advance owns, controls and directs Defendant Conde Nast Entertainment, LLC (d/b/a

---

[6] https://www.iheartmedia.com/legal/terms

Teen Vogue) ("Teen Vogue") which has its principal place of business at 1 World Trade Center, New York, NY 10007.

25.     Defendant JCK Legacy Company (f/k/a The McClatchy Company) (d/b/a Kansas City Star,) ("Kansas City Star") owns The Kansas City.  McClatchy's corporate headquarters is at 2100 Q Street, Sacramento, CA 95816-6899. The McClatchy Company filed for Chapter 11 in the United States Bankruptcy Court for the Southern District of New York, Case No. 20-10418. The McClatchy Company availed itself of the jurisdiction of the district in February 2020. Kansas City Star committed alleged willful copyright infringement and cannot discharge this liability in bankruptcy. Plaintiff intends to seek consent to pursue this claim and have any stay lifted. Further, the Kansas City Star likely has customers in New York during all relevant time periods.

26.     Defendant Miami Herald Media Company (d/b/a Miami Herald) ("Miami Herald") has a principal place of business at 3511 NW 91 Ave, Miami, FL 33172, and can be served at CT Corporation System, 1200 South Pine Island Road, Plantation FL 33324. The McClatchy Company and Miami Herald both filed for bankruptcy in the Southern District of New York, availing themselves to the jurisdiction New York in February 2020.  Miami Herald committed alleged willful copyright infringement and cannot discharge this liability in bankruptcy. Plaintiff intends to seek consent to pursue this claim and have any stay lifted from case 20-10450.  Miami Herald likely also had customers in New York during all relevant time periods.

27.     Defendant Columbus Ledger-Enquirer, Inc. ("Ledger-Enquirer") has a principal place of business at 945 Broadway, Suite 102, Columbus. GA 3190, and can be served at CT Corporation, 180 Cherokee Street NE, Marietta, GA 30060. The McClatchy Company and

Ledger-Enquirer both filed for bankruptcy in the Southern District of New York, availing themselves to the jurisdiction New York in February 2020.  Ledger-Enquirer committed alleged willful copyright infringement and cannot discharge this liability in bankruptcy.  Plaintiff intends to seek consent to pursue this claim and have any stay lifted from case 20-10424. Ledger-Enquirer likely had customers in New York during all relevant time periods.

28.    Defendant T&R Productions, LLC (d/b/a RT Network) is a District of Columbia company, with its principal place of business at 1325 G Street NW Suite 250, Washington, DC 20005 and can be served as the same address. RT Network claims that it is "an autonomous, non-profit organization that is publicly financed from the budget of the Russian Federation." Upon information and belief, RT Network has registered to do business in New York under DOS ID 5057413.

29.    Defendant G/O Media, Inc. (d/b/a The Root) ("The Root") is a corporation that has its principal place of business at G/O Media, 1540 Broadway, 27th Floor, New York, NY 10036.

30.    Defendant IBT Media, Inc. (d/b/a International Business Times) ("IBT") has its principal place of business at 33 Whitehall St FL 7, New York, NY 10004, and can be served at IBT Media Inc., 7 Hanover Square 5TH FL., New York, New York 10004.

31.    Defendant CBS Interactive, Inc., d/b/a CBSNews.com ("CBS") is a Delaware corporation and has its principal place of business at C/O Ashley Chaffin, 51 W. 52ND St. (19-13), New York, New York, 10019.  It can be served at Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

32.    Defendant CBS Interactive, Inc., d/b/a Popculture.com ("CBS") is a Delaware corporation and has its principal place of business at C/O Ashley Chaffin, 51 W. 52ND St. (19-

13), New York, New York, 10019.  It can be served at Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

33.     Defendant Tegna Inc. is a Delaware Corporation with its principal place of business at 8350 Broad Street, Suite 2000, Tysons, VA 22102.  It owns and operates numerous entities that distribute content into the district.  Tegna also owns and controls WKYC, WFAA, and, upon information and belief, WXIA.  Tegna informs its web site users that "this agreement will be governed by and construed in accordance with the laws of the State of New York."

34.     Defendant WKYC-TV, LLC, a Delaware company, and/or Defendant Tegna Inc. are companies that own, operate, and/or control the web site https://www.wkyc.com.  Tegna requires anyone that is on the site to be bound by terms governed by and construed in accordance with the laws of the State of New York, exclusive of its choice of law rules and "each party to this Agreement hereby submits to the exclusive jurisdiction of the state and federal courts sitting in the County of New York in the State of New York."  See https://www.wkyc.com/terms.

35.     Defendant WFAA-TV, INC., a Texas-based company with its address at 606 Young St, Dallas, TX 75202, and/or Defendant Tegna Inc. are companies that own, operate, and/or control the web site https://www.wfaa.com.  Tegna allegedly requires anyone that is on the site to be bound by terms governed by and construed in accordance with the laws of the State of New York, exclusive of its choice of law rules, and "each party to this Agreement hereby submits to the exclusive jurisdiction of the state and federal courts sitting in the County of New York in the State of New York."  See https://www.wfaa.com/terms.

36.     Defendant Pacific and Southern, LLC (d/b/a WXIA) ("WXIA") and/or Defendant Tegna Inc. are companies that own, operate, and/or control the web site https://www.11alive.com.  Tegna requires anyone that is on the site to be bound by terms

governed by and construed in accordance with the laws of the State of New York, exclusive of its choice of law rules, and "each party to this Agreement hereby submits to the exclusive jurisdiction of the state and federal courts sitting in the County of New York in the State of New York."

37.     Defendant The Daily Caller, Inc., has its principal place of business at 1920 L Street NW, Suite 200, Washington, DC 20036, and operates the site www.dailycaller.com, founded by Fox News commentator, Tucker Carlson.  It is alleged and on reasonable belief, the Dailycaller.com has customers (subscribers) that can be found in the district.

38.     Defendant Worldwide Media Services Group, Inc. (f/k/a American Media, Inc.) (d/b/a Adventure Sports Network) (see https://www.americanmediainc.com/brands/overview) is a Delaware corporation with its principal place of business at 4 New York Plaza, New York, New York 10004.  It owns and operates the web site for Adventure Sports Network.  Defendant A360 Media LLC, a Delaware company with its principal place of business at 4 New York Plaza, New York, New York 10004 and likely also has or had operational control over Adventure Sports Network, with a website at

https://videos.adventuresportsnetwork.com/pages/discover/d/discover.

39.     Defendant TEN: Publishing Media, LLC (d/b/a Adventure Sports Network), is a Delaware company based at 831 S. Douglas Street, El Segundo, CA 90245 that distributes and did distribute media products and magazine subscriptions to the district, and was the owner of the Adventure Sports Network when the infringement first occurred in December 2017.

40.     Defendant Hearst Properties, Inc. (d/b/a KCCI, WESH, WLKY, WMTW, WMUR, WPBF, and WXII) ("Hearst Properties"), is a Delaware company that owns and operates websites for these television stations.  Each web site for KCCI (https://www.kcci.com/),

WESH (www.wesh.com),  WLKY (www.wlky.com), WMTW(https://www.wmtw.com/) ,

WMUR (https://www.wmur.com/), WPBF (https://www.wpbf.com/), and WXII

(https://www.wxii12.com/) have terms of service that require all "[c]laims of *infringement* or

misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be

exclusively brought in the state and federal courts located in New York City, New York."

Therefore, Hearst Properties submits itself to the jurisdiction of this court.

41.     Defendant Hearst Stations Inc. (d/b/a KMBC, and KSBW)("Hearst Stations") is a

Delaware corporation with its principal place of business at 300 West 57th Street, New York,

New York 10019.  It operates websites for KMBC (https://www.kmbc.com/) and KSBW

(https://www.ksbw.com/) and have terms of service that require all "[c]laims of *infringement* or

misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be

exclusively brought in the state and federal courts located in New York City, New York."

Therefore, Hearst Stations submits itself to the jurisdiction of this court.

42.     Defendant Hearst Television, Inc. (d/b/a KCRA and WBAL) ("Hearst

Television") is a Delaware corporation with its principal place of business at 300 West 57th

Street, New York, New York 10019.  It operates websites for KCRA (https://www.kcra.com/)

and WBAL (https://www.wbaltv.com) and have terms of service that require all "[c]laims of

*infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret

shall be exclusively brought in the state and federal courts located in New York City, New

York."  Therefore, Hearst Television submits itself to the jurisdiction of this court.

43.     Defendant Ohio/Oklahoma Hearst Television Inc. (d/b/a KOCO) is a Delaware

corporation with its principal place of business at 300 West 57th Street, New York, New York

10019.  It operates websites KOCO (https://www.kmbc.com/) and has terms of service that

require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, Ohio/Oklahoma Hearst Television Inc. submits itself to the jurisdiction of this court.

44.    Defendant Jackson Hearst Television Inc. (d/b/a WAPT) ("Jackson Hearst") is a Delaware corporation with its principal place of business at 00 West 57th Street, New York, New York 10019.  It operates a website for WAPT (https://www.wapt.com/) and has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, Jackson Hearst submits itself to the jurisdiction of this court.

45.    Defendant WVTM Hearst Television, Inc. ("WVTM"), is a Delaware corporation with its principal place of business at 00 West 57th Street, New York, New York 10019.  It operates a website for WVTM (https://www.wvtm13.com/) and has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, WVTM submits itself to the jurisdiction of this court.

46.    WJCL Hearst Television, LLC (d/b/a WJCL) has its principal at 300 West 57th Street, 39fl, New York, NY 10019, and is a Delaware company that owns and operates the website https://www.wjcl.com/.  The website has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, WJCL submits itself to the jurisdiction of this court.

16

47.     Defendant Some Spider, Inc. (d/b/a ScaryMommy.com) has its principal place of business at 20 West 22nd Street, Suite 301, New York, NY 10010 and is owned by Some Spider Inc. It operates the web site https://www.scarymommy.com/.  It can be served via Vinit Bharara, 20 West 22ND Street, Suite 601, New York, New York 10010.

48.     Defendant Uproxx, LLC. (d/b/a Uproxx), has its principal place of business at 10391 Jefferson Blvd., Culver City, CA 90232.  Uproxx is owned, controlled and operated by Defendant Warner Media, LLC and directs all DMCA complaints to the Litigation Department, 1633 Broadway New York, NY 10019. Defendant Warner Media, LLC is a Delaware company with its registered agent at 28 Liberty Street, New York, New York, 10005.  Warner Media, LLC's principal place of business is at Warner Media, 30 Hudson Yards, New York, NY 10001.

49.     Defendant Planck, LLC (d/b/a Patch Media) is a Delaware company with its principal place of business at 134 W. 29th Street, 11th Floor, New York, NY 10001.

### III. JURISDICTION AND VENUE

50.     This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

51.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391 because each of Defendants' respective principal places of business can be found in this District, or pursuant to 28 U.S.C. § 1400(a)(venue for copyright cases), Defendants each availed themselves in this District as alleged herein.

52.     This Court has *in personam* jurisdiction over Defendants because Defendants each availed themselves of the privileges of conducting business in this district and the State of New York and incurred a benefit from the copyright infringements, thus it is reasonable for each Defendant to submit to the jurisdiction of this district court.  Certain Defendants also represented

that they choose this district for copyright disputes regardless of where the operating entity existed.

## IV. TOLLING OF THE STATUTE OF LIMITATIONS

53.     Throughout the time period relevant to this action, Defendants affirmatively suppressed, concealed, and omitted from Plaintiffs their acts and omissions violating Plaintiffs' rights.  Defendants willfully and knowingly kept Plaintiffs ignorant of vital information essential to Plaintiffs' rights and violations of Plaintiffs' rights essential to pursuit of a claim against the Defendants, and as a result, Plaintiffs could not have discovered the violation of rights, even upon reasonable exercise of due diligence.

54.     Defendants were aware their actions were violating Plaintiffs' rights, but continued to violate Plaintiffs' rights, for their own financial gain, while suppressing, concealing and omitting this information from the Plaintiffs.

## V. CLASS ALLEGATIONS

55.     Plaintiff Nicklen brings this claim against Defendants, and all other Defendants similarly situated, under Fed. R. Civ. P. 23(a), and for statutory damages.  Pursuant to Fed. R. Civ. P. Rule 23(a) "[o]ne or more members of a class may ... be sued as representative parties on behalf of all members." Class Definition and Ascertainability:

Plaintiff proposes the following class definition:

**"All persons and entities without a valid license who published, embedded, or caused to be displayed Plaintiff Nicklen's "starving polar bear" Video into a Defendant's web site post using the Instagram or Facebook embedding tool (API)." ("Defendant Class").**

56.     The exact number of Defendant class members is unknown, but is reasonably ascertainable with objective criteria.  The actual number is anticipated to be several hundred, or

over one thousand and potentially located all over fifty states.  Thus, under Fed. R. Civ. P. 23(a)(1), the Defendant class is so numerous that joinder of all members is impracticable.

57.     Pursuant to Fed. R. Civ. P. 23(a)(2), there are questions of law or fact common to the Defendant class members.  The class members electronically embedded the Video and published it without a license.  Plaintiff Nicklen's claims arise from infringements pursuant to the Copyright Act and may be applied against all Defendants in one lawsuit.  Plaintiff Nicklen's claims arise from a common federal statute legal theory and a common nucleus of operative facts relevant to each Defendant class member.  This liability question may be decided by one Court. Moreover, Defendants may assert a common defense, such as fair use, which may be decided by this Court in one lawsuit.  Common issues of law or fact for the Defendant class, include, but are not limited to:

a.   Whether Defendants embedded the Video causing it to be displayed to the public without a license to do so;

b.   Whether the Defendants violated the Copyright Act by infringing any of Plaintiff Nicklen's exclusive rights in his copyrighted Video;

c.   Whether Defendants knew or acted in reckless disregard of the high probability that its actions infringed any of Plaintiff Nicklen's exclusive rights in his copyrighted Video;

d.   Whether actual or statutory damages apply for all violations of the Copyright Act;

e.   Whether a common defense such as fair use applies to Defendants' posts;

58.     Pursuant to Fed. R. Civ. P. 23(a), the defenses, which are anticipated to be raised and interposed by the representative Defendant (Sinclair Broadcast Group, Inc.) named herein

will be typical for the rest of the Defendant class members.  There is a common liability question to be decided regarding Defendants' wrongful conduct and violation of the Copyright Act, which is applicable and typical for all Defendant class members.

59.     Pursuant to Fed. R. Civ. P. 23(a)(4), the representative Defendants in this lawsuit will fairly and adequately represent and protect the interests of the other members of the Defendant class.  The named Defendants are large media conglomerates with well-known counsel who are intimately familiar with Federal Copyright law and class action lawsuits.  These law firms, which represent the named Defendants, have extensive experience representing parties in Federal Copyright Law, complex litigation and class actions, have knowledge and experience of the liability claims, defenses to be raised and procedural nature of Rule 23, as a procedural mechanism to decide a common federal liability question in one lawsuit with common defenses.

60.     A class action may be maintained in this lawsuit because Rule 23(a) is satisfied and 23(b):

> (1) prosecuting separation actions against individual class member Defendants would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or,
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

> See Fed. R. Civ. P. 23(b).

61.     This class may also be maintained for damages, which involve federal statutory damages with questions of law or fact, which predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.  Statutory damages have already occurred and continue, and the litigation of this issue may be managed and accomplished in one collective action, including, where necessary, any bifurcation on any damage issue, which should be limited because federal Copyright law for damages applies and there are not individual varying state damage law calculations and differences.  Therefore, litigation of these issues is superior and may be managed cohesively in one lawsuit.

62.     This litigation in New York as an established forum familiar with copyright law and media interests and manageability of this type of lawsuit in one lawsuit in controlling the prosecution or defense supports collective action because rulings on federal law would be applicable to not only named class representative Defendants, but also other Defendants.

63.     Substantial commonality exists with federal Copyright liability and federal Copyright defenses.

64.     Plaintiff is willing to work and cooperate on any notice requirements required by the Court to notify Defendant entities of this Copyright lawsuit and that rulings herein may affect their rights.

65.     Plaintiff believes counsel for the named Class Representative Defendants are adequate and very knowledgeable on defending this lawsuit in a collective proceeding. However, the Court may also, in its discretion, nominate interim Defense counsel under Rule 23(g).

66.     Pursuant to Fed. R. Civ. P. 23(b)(3), the common questions of law and fact predominate over any questions, which may affect individual members of the Defendant Class. Maintaining this lawsuit as a collective action before one Court is a superior means of litigating this lawsuit, rather than hundreds of courts around the country deciding common operative facts

against the same Federal Copyright Act violations, and interposed common defenses applicable to all Defendants, in the proposed Defendant Class.  The risk of inconsistent litigation with possibly thousands of lawsuits over the same operative facts and Federal Copyright law and interposed common defenses could result in inconsistent adjudication and standards across the country and would also pose a large burden on the court system throughout the country.

67.     This lawsuit, as it arises from a common operative nucleus of facts, and Federal Copyright Law can be effectively managed by this Court, which will conserve judicial resources, preserve the rights of the parties and other members of the Defendant class, and avoid inconsistent and varying determinations of liability and defenses on Federal Copyright Law, which could create incompatible and inconsistent legal decisions and guidance for the parties in this lawsuit and future lawsuits.

68.     One Court can decide the primary legal issues and defenses.  Any remaining issue may be decided in bifurcation, if necessary, but the main legal liability is federal statutory law and federal statutory damages, therefore, one lawsuit is a superior means of adjudicating the common operative facts and law.

69.     Plaintiffs respectfully request that the Court exercise its, under its authority pursuant to Fed. R. Civ. P. 57 and the Federal Declaratory Judgment Act, 29 U.S.C. § 2201, which provides that any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. Any such declaration shall have the force and effect of a final judgment or decree.  Plaintiffs respectfully request the Court declare the rights of the parties under Federal Copyright Act and law, Defendants cease and desist from publishing the Video without a license from Plaintiff

Nicklen, and for statutory damages available under the Federal Copyright Act, or compensatory damages, available pursuant to the Federal Copyright Act.

## VI. GENERAL FACTUAL ALLEGATIONS

70.     In July of 2017, Plaintiff Nicklen and Plaintiff Mittermeier and a small crew affiliated with SeaLegacy, the conservationist media production organization founded by the Plaintiffs, set out for the Canadian Arctic on a photography and filmmaking expedition.  Costing as much as hundreds of thousands of dollars each to conduct, these expeditions are used to capture audiovisual content for the purpose of creating compelling conservation-oriented documentary films and still images which Plaintiffs then license for a variety of purposes as one of their means for making a living.  On this expedition, the crew trekked to Somerset Island, adjacent to the much larger Baffin Island, in the mostly rural Canadian territory of Nunavut where they were surprised to encounter one of the region's famed polar bears rummaging through garbage cans of a local village in a desperate attempt to find food.  The Plaintiffs filmed and photographed the emaciated bear believing it to be an accurate representation of the fate that awaited the world's polar bear population given the toll that global warming is taking on their natural habitat.

71.     On or about December 5, 2017, Plaintiff Nicklen posted a brief edit of the footage he had captured of the starving polar bear the past July to his public Instagram account (user "paulnicklen," located at:  https://www.instagram.com/p/BcU-6PsAoIp/)[7] with following caption after the post's byline:

> My entire @Sea_Legacy team was pushing through their tears and emotions while documenting this dying polar bear. It's a soul-crushing scene that still haunts me, but I know we need to share both the beautiful and the heartbreaking if we are going to break down the walls of apathy. This is what

---

[7] Nicklen also posted the same Video on this Facebook account with the same text. See https://www.facebook.com/paulnicklen/videos/10155204590778364/

starvation looks like. The muscles atrophy. No energy. It's a slow, painful death. When scientists say polar bears will be extinct in the next 100 years, I think of the global population of 25,000 bears dying in this manner. There is no band aid solution. There was no saving this individual bear. People think that we can put platforms in the ocean or we can feed the odd starving bear. The simple truth is this—if the Earth continues to warm, we will lose bears and entire polar ecosystems. This large male bear was not old, and he certainly died within hours or days of this moment. But there are solutions. We must reduce our carbon footprint, eat the right food, stop cutting down our forests, and begin putting the Earth—our home—first. Please join us at @sea_legacy as we search for and implement solutions for the oceans and the animals that rely on them—including us humans. Thank you your support in keeping my @sea_legacy team in the field. With @CristinaMittermeier #turningthetide with @Sea_Legacy #bethechange #nature #naturelovers

**This video is exclusively managed by Caters News. To license or use in a commercial player please contact info@catersnews.com or call +44 121 616 1100 / +1 646 380 1615" (emphasis added)**



72.     The text that accompanied the Video on Instagram clearly put the world on notice that the Video was available for licensing.  In fact, Plaintiff Nicklen believes he licensed his Video to almost two dozen entities both in the United States and throughout the world, which is clear evidence that there was a market value for the Video and those media organizations

recognized that licensed the Video that was also posted on Instagram simply could not be embed the Video into their publication or that the display and/or the use was a "close call" in terms of "fair use."  Using "fair use" as catch-all defense for publishers that needed a justification is usually analyzed after the fact, to avoid seeking and paying a licensing fee when they are caught infringing.   While not ideal and not generally consistent with reasonable and acceptable industry practices for reputable news organizations, Nicklen did license the Video after it was published on at least one occasion.

73.     On December 5, 2017, Plaintiff Mittermeier posted her Photo on her public Instagram account at https://www.instagram.com/p/BcU_8c8FDA8/ as follows:



74.     Like Nicklen, Mittermeier also licensed her Photo to online entities who all presumably recognized that the use of the photo for publication required a license and could not be considered fair use.

## A. COMMON ALLEGATIONS OF EVIDENCE OF THE INFRINGEMENTS

75.     Starting on or about December 8 through on or around December 13, 2017, Defendants began embedding and/or displaying Plaintiff Nicklen's Video and, in four instances as alleged below, Plaintiff Mittermeier's Photo.  The embeds were made using either Instagram or Facebook as noted, which have substantially similar terms related to copyright and embedding policies.  The wrongful acts and the facts surrounding such conduct are generally common to each Plaintiff and each Defendant.  The subject matter is of the same polar bear, captured the polar bear footage and still image on the day in 2017 and each Plaintiff posted their copyrighted work to Instagram on the same day.

76.     Certain Defendants have already indicated their intent to assert a fair use defense, which is neither supported by the facts nor the law.  The use of the Video by Defendants is not transformed by or through commentary or criticism sufficient for fair use purposes; at best, some uses merely notes the "viral" nature of the Video and Photo before discussing the contents of the video and the circumstances under which the Plaintiffs captured the Video and Photo as explained by Plaintiffs in the caption to their Instagram posts, in a December 7, 2017 article about the video published by licensee, National Geographic,[8] or in a December 8, 2017 article about the video published by licensee, CBC, Radio Canada.[9]  Moreover, in all the posts by Defendants where the Video was used, each displayed or caused to be displayed the entire one-minute Video, far more than is reasonably required or necessary to comment or criticize the subject matter of the Video or Video itself.  The use of the entire Video here is analogous to a writer that critiques a Hollywood blockbuster and embeds the entire movie into the article, then

---

[8] See: https://www.nationalgeographic.com/news/2017/12/polar-bear-starving-arctic-sea-ice-melt-climate-change-spd/

[9] https://www.cbc.ca/radio/asithappens/as-it-happens-friday-edition-1.4439608/all-of-our-team-was-in-tears-video-shows-polar-bear-starving-in-the-north-1.4439616

tries to assert a "fair use" defense to justify the display of the entire movie. The use of the entire film is not required or necessary in that critique any more than the use and display of the entire Video is not required here.  Additionally, because Plaintiffs regularly license their videos and photographs as a part of their means to make a living, and did so with the Video and Photo, the Defendants' unauthorized, non-transformative display of the Video and Photo usurped the market for Plaintiffs' to license Video and Photo.  Finally, because the text accompanying the four instances of the embedded Photo mentioned only the Video, the Photo's display by four Defendants cannot be considered fair by any reasonable measure.  Thus, any fair use defense will fail on its face.

77.    Plaintiffs join in this same complaint against the various individual Defendants as the most efficient means to adjudicate the disputes by all parties involved because the liability alleged generally is caused by the same Video and Photo of the polar bear, with the infringements all occurring within a few days using substantially similar means to display the Video and Photos.  Further, the transaction, occurrence, or series of transactions or occurrences (the infringements are all separate) are similar, warranting the court to administer this case under one consolidated action, with each Defendant being subject to the jurisdiction of this court, otherwise, inconsistent results could occur.

78.    Each Defendant caused the Video owned by Nicklen or the Photo owned by Mittermeier to be displayed on the respective Defendants' website via the Instagram API embed, described below, without securing a valid license or permission from each Plaintiff, or a valid legal defense such as fair use.  This is also despite Plaintiff Nicklen making it clear in the Instagram post that his Video was available for licensing through Caters News Agency.

79.     Prior to the embedding and displaying of the Video and Photos by Defendants on their respective web sites, as is described in more detail below, Plaintiff Nicklen's Video and Mittermeier's Photo were first posted and displayed on their respective public Instagram accounts on or about December 5, 2017.  Each Plaintiff maintains the sole copyright interest in their works and each Plaintiff timely registered the works with the US Copyright office.

80.     All Defendants, except where noted, accomplished its unauthorized display of Nicklen's Video or Mittermeier's Photo by inserting the unique computer code attached to Video or Photo on each of Plaintiff's respective Instagram accounts, generally referred to as Instagram's application programming interface ("API") code, in the Defendants' respective websites causing the Video or Photo to simultaneously be displayed within the body of the Defendants' web site without the need for a viewer of Defendants' web site to take additional action or navigate their web browser away from the web site to the Instagram account of Nicklen or Mittermeier.  In other words, a viewer of the article on the web site likely did not even know that the Video or Photo displayed in the body of the web site was "embedded" and the actual Video or Photo file was stored on Instagram's server.[10]

81.     To a viewer of the Post, content embedded from an Instagram account appears no differently than other content within the Post, be it an advertisement, clickable link, or Defendant's original and/or owned or licensed content. A viewer does not need to be an Instagram user or have an Instagram account (or Facebook account) to view Instagram photos and videos or Facebook videos embedded within any of Defendants' posts including all the ones at issue.

---

[10] Upon information and belief, Instagram's default format for images is JPEG (.jpg), meaning that any image that is uploaded in PNG (.png), BITMAP (.bmp) or MP4 of MOV files.

82.     All Instagram account holders, including Plaintiffs, allegedly agree to Instagram's Terms of Use in order to initially open an account and maintain that account for use on the Instagram platform.  Pursuant to Instagram's Terms of Use, Instagram users, such as Plaintiffs, retain ownership of their copyrighted photos and videos that are posted to their Instagram accounts.  However, each user agrees to grant Instagram a nonexclusive license to the content the user posts to their Instagram account, including any copyrighted photos or videos, which, in turn, provides Instagram permission to license, or sublicense, those copyrighted photos should Instagram elect to do so.[11]  There is no evidence that Instagram or Facebook granted any Defendant in this case a license to the Video or Photo.  In fact, Instagram, through Facebook's lawyers, represented in court that Instagram has never given out a license to a publisher who uses the Instagram API embed as noted above. Therefore, Instagram's terms make it clear that publishers still need to obtain a license or permission, as required by law.

83.     Further, users, such as each Defendant that used Instagram's API embedding code, agrees to be bound by an additional set of rules contained within Instagram's Platform Policy ("Platform Policy").[12]  Notably, the Platform Policy contains no language (that can be reasonably interpreted or misconstrued) that provides API users such as each Defendant here a license or sub-license to freely use, display, publish, or embed the photos of users such as Plaintiffs without first ensuring that each Defendant received "all rights necessary to display the content of general Instagram users."[13]

---

[11] See Instagram Terms of Use.
[12] See Instagram Platform Policy.
[13] See Instagram Platform Policy at D-9.

84.     Non-party Facebook Inc., who owns and controls its subsidiary, Instagram, LLC, publicly confirmed that Instagram's Platform Policy does not automatically give API users a license or sub-license to use and display the content of Instagram's general user population:

> "While our terms allow us to grant a sub-license, we do not grant one for our embeds API. Our platform policies require third parties [such as Defendants] to have the necessary rights from applicable rights holders. This includes ensuring they have a license to share this content, if a license is required by law."[14]

85.     Plaintiffs are not aware at this time of any Defendant having obtained a license for the Video or Photo.

86.     Instead, Defendants stole Nicklen's Video and/or Mittermeier's Photo by using the Instagram API tool to "embed" each in certain posts on Defendants' respective websites. This is despite Instagram's public position regarding licensing and the use of the API, and at least two court rulings in the Southern District of New York in *McGucken v. Newsweek LLC et. al.*, No. 1:2019cv09617 - Doc. 35 (S.D.N.Y. June 1, 2020) and *Sinclair v. Mashable Inc*. No.: 1:18-cv-00790 (S.D.N.Y.).  Certain Defendants that received a takedown notice in early 2018 when Plaintiffs discovered some infringements generally took down the alleged infringements of the Video and Photo unless otherwise noted.

87.     However, Plaintiffs discovered additional infringers in November and December 2020 and sent takedown notices to some identifiable and ascertainable infringing Defendants. However, Plaintiffs have recently evaluated the litigation, recent developments, and believe that due to the large number of additional infringers on the same occurrence and set of facts, that a Defendant class is the more appropriate procedural mechanism and appropriate vehicle to drive this common factual and legal dispute and manage this legal matter for the benefit of all parties

---

[14] Timothy B. Lee, *Instagram just threw users of its embedding service under the bus*, Ars Technica, June 4, 2020. Available at: https://arstechnica.com/tech-policy/2020/06/instagram-just-threw-users-of-its-embedding-api-under-the-bus/.

and the court system.  Plaintiffs believe this amendment is appropriate to adjudicate the common questions of law and fact across the spectrum of similarly situated Defendant media Defendants given that there were likely hundreds or more of infringers such as Sinclair Broadcast and its operating entities, infringing on the same operative nucleus of facts under the same federal law. In any event, the Defendants that did not takedown the Video and Photo were on actual or constructive notice of Instagram's position about the API/no automatic license, the two S.D.N.Y. court decisions, and willfully or recklessly ignored this information, even though each Defendant would likely be considered sophisticated corporate digital publishing companies with lawyers or management to address licensing and photo/video rights clearing for any such uses.

## B.  INFRINGEMENTS ALLEGED BY PLAINTIFF NICKLEN

88.    None of the following Defendants secured a license or permission from Nicklen to display or use his copyrighted Video in their respective website posts.

89.    Plaintiff Nicklen's Video is filed as Exhibit "4" (under separate cover) and the U.S. Copyright Office's registration for his video is attached as Exhibit "4A" and bears an Effective Date of February 7, 2018 and Registration number PA 2-102-139.

90.    Defendant Sinclair Broadcast Group, Inc. ("Sinclair") is the parent company of its subsidiary entity WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) and owns over 200 television stations in the United States that operate web sites.  Sinclair likely published a post that was used by all 200 stations upon information and belief, such as Defendant WCWN Licensee LCC or WCWN LLC. Plaintiff sent Defendant Sinclair Broadcast Group, Inc. a DMCA-compliant takedown demand on December 9, 2020, but Defendant Sinclair has yet to comply with the demands and Plaintiff's video remains displayed on the posts for all its entities that it owns.

91.     Defendant WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) embedded Nicklen's Video from his Facebook account (the Nicklen Instagram post is identical to the Nicklen Facebook post having the same video and the same caption text) in a post attributed to the Sinclair Broadcast Group titled, "Starving Polar Bear Goes Viral in Heartbreaking Video," published on December 11, 2017 (available at: http://cwalbany.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video).  This Sinclair Broadcast/WCWN post is attached as Exhibit 5.  As a Defendant that is similarly situated to all the Sinclair-owned entities, WCWN (CW 15), published a Sinclair Broadcast Group post that essentially does a cut and paste job (some might even refer to this as plagiarism) from the *Nat Geo* article.  Exhibit 5 shows in yellow highlights the text that the Sinclair post plagiarized from the *Nat Geo* article, which is attached as Exhibit 6, and shows in yellow highlights the source text used in the Sinclair post.  To make matters worse for Sinclair Broadcast Group, Exhibit 5 also shows in blue highlights the text that the Sinclair post plagiarized from Nicklen's Facebook Post, which is attached as Exhibit 7, and shows in blue highlights the source text used in the Sinclair post.  Defendant Sinclair's post was essentially a "cut and paste" job. The nature of Sinclair post, posted by and through as many as 294 Sinclair stations, and over 100 Sinclair entities, displayed the entire Video and a near complete crib job of the *Nat Geo* article and Nicklen's Facebook text, destroying any "fair use" defense Sinclair Broadcast may raise.  Sinclair Broadcast has a history of using its television stations (all operated under separate LLC's) to parrot the same material, even though each station has a website that is operated through a separate corporate entity.[15]  See attached Exhibit 2 for a list of all known Sinclair corporate entities filed with the SEC in 2017 that are similarly situated defendants (for a

---

[15] https://www.nytimes.com/2018/04/02/business/media/sinclair-news-anchors-script.html

Defendant class). WCWN published the same post on their web sites with the Video without a license or a valid defense.

92.     Defendant Mashable embedded Plaintiff Nicklen's Video from his Instagram account in a post titled "The polar bear in this video is dying from starvation. Fortunately, most aren't...yet," on December 8, 2017 (available at: https://mashable.com/2017/12/08/starving-polar-bear-video-threatened-species/#ye8j1xjlbOq4). After Plaintiff sent a DMCA-compliant takedown demand on March 15, 2017, Defendant Mashable promptly removed the infringing material from its post, but refused to offer just compensation to Plaintiff for the copyright infringement of his Video.

93.     In December 2017, Mashable did not have a written or oral policy or guideline related to embedding photos or videos from social media accounts (such as Instagram) and relied on a legal fiction that no one in the publishing industry ever needed to secure a license or permission from a copyright holder if they used Instagram.  As is described herein, Instagram has never given any publisher such as Mashable a license when using an Instagram embed.  The nature of Mashable's display of the Video does not warrant a "fair use" defense.

94.     Defendant BuzzFeed, Inc. has a pending acquisition for Defendant TheHuffingtonPost.com, Inc. from Defendant Verizon Media, Inc. and has been sued to the extent there exists successor liability that is unknown to Plaintiff.

95.     Defendant TheHuffingtonPost, Inc. embedded Plaintiff Nicklen's Video from his Instagram account in a post titled "Heartbreaking Video Shows Starving Polar Bear On Warming Canadian Island," on December 8, 2017 (available at https://www.huffpost.com/entry/starving-polar-bear-canada_n_5a2b1e5ae4b069ec48ad80f9). After Plaintiff sent a DMCA-compliant takedown demand on March 22, 2017, Defendant TheHuffingtonPost.com, Inc.

promptly removed the infringing material from its post, but refused to offer just compensation to Plaintiff for the copyright infringement of his video.  The nature of HuffPo's display of the Video does not warrant a "fair use" defense.

96.    Defendant Oath, Inc. (d/b/a Yahoo!), or Verizon Media, Inc. as the proof will show, embedded Plaintiff Nicklen's Video from his Instagram account in a post titled "The polar bear in this video is dying from starvation. Fortunately, most aren't...yet," on December 8, 2017 (available at https://www.yahoo.com/news/polar-bear-video-dying-starvation-021354020.html). After Plaintiff sent a DMCA-compliant takedown demand on March 22, 2017, Defendant Yahoo! Inc. promptly removed the infringing material from its post, but refused to offer just compensation to Plaintiff for the copyright infringement of his video. The nature of Yahoo's display of the Video does not warrant a "fair use" defense.

97.    Defendant GateHouse Media, Inc. acquired Defendant Gannett Co., Inc., Gannett Media Corporation, Gannett Satellite Information Network, LLC, Phoenix Newspapers, Inc., and Detroit Free Press, Inc. sometime during the alleged infringement period in 2019 and has been sued to the extent there exists successor liability that is unknown to Plaintiff.

98.    Defendant Gannett Co., Inc. (d/b/a USA Today) embedded Plaintiff's Video from his Instagram account in a post titled "National Geographic photographer shares emotional video of dying polar bear," published on December 8, 2017 (available at: https://www.usatoday.com /story/news/nation-now/2017/12/08/national-geographic-photographer-shares-emotional-video-dying-polar-bear/936921001/).  Plaintiff sent Defendant Gannett Co., Inc. a DMCA-compliant takedown demand on November 25, 2020, but Defendant Gannett Co., Inc. has yet to comply with the demands within that notice and Plaintiff's video remains displayed on its post.  The nature of USA Today's display of the Video does not warrant a "fair use" defense.

99.     Defendant Phoenix Newspapers, Inc. (d/b/a The Arizona Republic) embedded Plaintiff's Video from his Instagram account in a post titled "National Geographic photographer shares emotional video of dying polar bear," published on December 8, 2017 (available at: https://www.azcentral.com/story/news/local/arizona-environment/2017/12/08/paul-nicklen-national-geographic-photographer-shares-emotional-video-starving-polar-bear/935588001/).   Plaintiff sent Defendant Gannett Co., Inc. a DMCA-compliant takedown demand on November 25, 2020, but Defendant Gannett Co., Inc. has yet to comply with the demands within that notice and Plaintiff's video remains displayed within its post.  The nature of The Arizona Republic's display of the Video does not warrant a "fair use" defense.

100.     Defendant Detroit Free Press, Inc. (d/b/a Detroit Free Press) embedded Plaintiff's Video from his Instagram account in a post titled "National Geographic photographer shares emotional video of dying polar bear," published on December 8, 2017 (available at: https://www.freep.com/story/news/nation-now/2017/12/08/national-geographic-photographer-shares-emotional-video-dying-polar-bear/936921001/).   Plaintiff sent Defendant Gannett Co., Inc. a DMCA-compliant takedown demand on November 25, 2020, but Defendant Gannett Co., Inc. has yet to comply with the demands within that notice and Plaintiff's video remains displayed within its post.  The nature of The Detroit Free Press' display of the Video does not warrant a "fair use" defense.

101.     Defendant Quartz, Inc. embedded Plaintiff's Video from his Instagram account in a post titled "Another crushing video of a starving polar bear forces viewers to face climate change," published on December 9, 2017 (available at: https://qz.com/1152310/a-crushing-video-of-a-starving-polar-bear-forces-viewers-to-face-climate-change/). Plaintiff sent Defendant Quartz a DMCA-compliant takedown demand on November 20, 2020, but Defendant Quartz has

yet to comply with the demands within that notice and Plaintiff's video remains displayed on its post. The nature of Quartz's display of the Video does not warrant a "fair use" defense.

102.     Defendant iHeartMedia, Inc. embedded Plaintiff's Video from his Instagram account in a post titled "'We Stood There Crying': Crew Films Starving Polar Bear," published December 9, 2017 (available at: https://www.iheart.com/content/2017-12-09-we-stood-there-crying-crew-films-starving-polar-bear/). Upon Plaintiff's delivery of a DMCA-compliant takedown demand on November 22, 2020, Defendant iHeartMedia, Inc. promptly removed the infringing display, but has yet to respond to Plaintiff's demand for just compensation. The nature of iHeartMedia, Inc.'s display of the Video does not warrant a "fair use" defense.

103.     Defendant Advance Publications, Inc. is the parent of Defendant Conde Nast Entertainment, LLC, publisher of Teen Vogue.

104.     Defendant Conde Nast Entertainment, LLC embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Heartbreaking Video of a Starving Polar Bear Goes Viral," published on December 9, 2017 (available at: https://www.teenvogue.com/story/starving-polar-bear-viral-video). Upon Plaintiff's delivery of a DMCA-compliant takedown demand on November 22, 2020, Defendant Conde Nast Entertainment, LLC promptly removed the infringing display, but has yet to substantively respond to Plaintiff's demand for just compensation. The nature of Teen Vogue's display of the Video does not warrant a "fair use" defense.

105.     Defendant JCK Legacy Company acquired the holdings of the bankrupt McClatchy Company, which include the Kansas City Star, the Miami Herald, and Columbus Ledger-Enquirer, Inc., sometime during the infringement period in 2020 and has been sued to the extent there exists successor liability that is unknown to Plaintiff.

106.    The Kansas City Star embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Starved polar bear digs through trash in iceless wasteland, 'soul-crushing' video shows," published on December 8, 2017 (available at: https://www.kansascity.com/news/nation-world/article188807969.html).  Despite Plaintiff's delivery of a DMCA-compliant takedown demand on March 30, 2018, The Kansas City Star continues its infringing display of Plaintiff's Video and has refused just compensation to Plaintiff.  The nature of The Kansas City Star's display of the Video does not warrant a "fair use" defense.

107.    The Miami Herald embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Starved polar bear digs through trash in iceless wasteland, 'soul-crushing' video shows," published on December 8, 2017 (available at: https://www.miamiherald.com/news/nation-world/world/article188807969.html).  The nature of The Miami Herald's display of the Video does not warrant a "fair use" defense.

108.    Defendant Columbus Ledger-Enquirer, Inc. (d/b/a Columbus Ledger-Enquirer) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Starved polar bear digs through trash in iceless wasteland, 'soul-crushing' video shows," published on December 8, 2017 (available at: https://www.ledger-enquirer.com/news/nation-world/world/article188807969.htm).  The nature of the Columbus Ledger-Enquirer's display of the Video does not warrant a "fair use" defense.

109.    Defendant T&R Productions, LLC (d/b/a RT Network[16]) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "'Soul-crushing': Filmmaker captures 'slow, painful death' of starving polar bear (VIDEO)," published on December 9, 2017

---

[16] Some time in 2017, during the period of infringement, Defendant RT registered with the U.S. Department of State as a foreign agent (Russia) at the Department's insistence. (See: https://www.justice.gov/opa/pr/production-company-registers-under-foreign-agent-registration-act-agent-russian-government.)

(available at: https://www.rt.com/news/412569-polar-bear-canada-dying/).  The nature of RT's display of the Video does not warrant a "fair use" defense.

110.    Defendant G/O Media, Inc. (d/b/a The Root) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "This Starving Polar Bear Should Prove to All Climate Change Deniers That They're Delusional and Disgusting," published on December 9, 2017 (available at: https://www.theroot.com/this-starving-polar-bear-should-prove-to-all-clim ate-ch-1821152672).  Despite Plaintiff's delivery of a DMCA-compliant takedown demand on March 30, 2018, The Root continues its infringing display of Plaintiff's Video and has refused just compensation to Plaintiff.  The nature of The Root's display of the Video does not warrant a "fair use" defense.

111.    Defendant IB Times, LLC (d/b/a International Business Times) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "WATCH: Heart-Wrenching Footage Of Starving Polar Bear Exposes Climate Crisis," published on December 9, 2017 (available at: https://www.ibtimes.com/watch-heart-wrenching-footage-starving-polar-bear-
exposes-climate-crisis-2626443).  Sometime after Plaintiff's DMCA-compliant takedown notice of March 27, 2018, the infringing display was removed from the International Business Times post, but Defendant IB Times, LLC has refused just compensation to Plaintiff for its unauthorized use.  The nature of the International Business Times' display of the Video does not warrant a "fair use" defense.

112.    Defendant CBS Interactive Media, Inc. embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer shares 'soul-crushing' video of dying polar bear," published on December 11, 2017 (available at: https://www.cbsnews.com/news/starving

-polar-bear-video-paul-nicklen-baffin-island/).  Despite Plaintiff's delivery of a DMCA-compliant takedown demand on November 24, 2020, Defendant CBS Interactive Media, Inc. has yet to cease its infringing display of Plaintiff's video or provide just compensation to Plaintiff. The nature of CBS News' display of the Video does not warrant a "fair use" defense.

113.    Defendant WKYC-TV, LLC embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Wildlife photographer posts heartbreaking video of starving polar bear," published on December 8, 2017.  The post was originally available at: https://www.wkyc.com/article/news/nation-world/wildlife-photographer-posts-heartbreaking-video-of-starving-polar-bear/95-49791368, but sometime during the alleged infringement period, it was removed.  The nature of WKYC-TV's display of the Video does not warrant a "fair use" defense.

114.    Defendant WFAA-TV, Inc. embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Wildlife photographer posts heartbreaking video of starving polar bear," published on December 8, 2017.  The post was originally available at: https://www.wfaa.com/news/nation-world/wildlife-photographer-posts-heartbreaking-video-of-starving-polar-bear/498152245, but sometime during the alleged infringement period, it was removed.  The nature of WFAA-TV's display of the Video does not warrant a "fair use" defense.

115.    Defendant The Daily Caller, Inc. embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Activists 'Stood There Crying' While Filming A Dying Polar Bear, Then Blamed Global Warming [VIDEO]" published on December 9, 2017 (available at: https://dailycaller.com/2017/12/09/activists-stood-there-crying-while-filming-a-dying-polar-bear-then-blamed-global-warming-video/).  The nature of The Daily Caller's display of the Video does not warrant a "fair use" defense.

116.     Defendant Worldwide Media Services Group, Inc. (f/k/a American Media, Inc.) acquired the online publication Adventure Sports Network from Defendant TEN: Publishing, Inc. some time during the infringement period in 2019 and has been sued to the extent there exists successor liability that is unknown to Plaintiff.

117.     Adventure Sports Network embedded Plaintiff Nicklen's Video from his Instagram account in a post published on or around December 8, 2017 that has since been removed (previously available at: https://www.adventuresportsnetwork.com/wildlife/starving-polar-bear-scrounging-food-painful-message-video/).  The nature of Adventure Sports Network's display of the Video does not warrant a "fair use" defense.

118.     Defendant Pacific and Southern, LLC (d/b/a WXIA) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Wildlife photographer posts heartbreaking video of starving polar bear," published on December 8, 2017 (available at: http://www.11alive.com/article/news/nation-world/wildlife-photographer-posts-heartbreaking-video-of-starving-polar-bear/95-497913684).  The nature of WXIA's display of the Video does not warrant a "fair use" defense.

119.     Defendant Hearst Properties, Inc. (d/b/a KCCI, WESH, WLKY, WMTW, WMUR, WPBF, WXII) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.kcci.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wesh.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wlky.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wmtw.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http

://www.wmur.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wpbf.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.wxii12.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KCCI, WESH, WLKY, WMTW, WMUR, WPBF, and WXII's display of the Video does not warrant a "fair use" defense.

120.    Defendant Hearst Stations Inc. (d/b/a, KMBC, KSBW) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.kmbc.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.ksbw.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KMBC and KSBW's display of the Video does not warrant a "fair use" defense.

121.    Defendant Hearst Television, Inc. (d/b/a KCRA, KOCO, WAPT, WBAL, WVTM) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.kcra.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.koco.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wapt.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wbaltv.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.wvtm13.com/article/photographers-soul-

crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KCRA, KOCO,

WAPT, WBAL, and WVTM's display of the Video does not warrant a "fair use" defense.

122.    WJCL HEARST TELEVISION LLC (d/b/a WJCL) embedded Plaintiff Nicklen's

Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of

starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.wjcl.

com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212).

The nature of WJCL's display of the Video does not warrant a "fair use" defense.

123.    Defendant Some Spider Inc. (d/b/a Scary Mommy) embedded Plaintiff Nicklen's

Video from his Instagram account in a post titled, "Biologist's Heartbreaking Video Of Starving

Polar Bear Goes Viral," published on December 9, 2017 (available at:

https://www.scarymommy.com/paul-nicklen-video-starving-polar-bear/).  The nature of Scary

Mommy's display of the Video does not warrant a "fair use" defense.

124.    Defendant Warner Media, LLC is the parent of Defendant Uproxx, LLC (d/b/a

Uproxx).  Defendant Uproxx, LLC embedded Plaintiff Nicklen's Video from National

Geographic's Facebook account in a post titled, "This Video Of A Starving Polar Bear

Rummaging Through Trash Should Be Our Global Warming PSA," published on December 9,

2017 (available at: https://uproxx.com/life/polar-bear-global-warming-climate-change/). The

nature of Uproxx's display of the Video does not warrant a "fair use" defense.

125.    Upon information and belief, all other defendants, such as those owned by

Defendant Hearst Communications, Inc.(which may own and control about 34 stations) through

various operating entities and other defendants that are similarly situated, infringed upon

Plaintiff Nicklen's Video without a license or a fair use defense, copying language from the

National Geographic article and/or Nicklen's Instagram or Facebook post with almost no

additional original copy that could be considered transformative sufficient to sustain a claim of fair use.

126.    Defendant Hearst Magazine Media, Inc. (d/b/a Cosmopolitan) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "This Haunting Video of a Dying Polar Bear Will Break Your Heart," published on December 9, 2017 (available at: https://www. cosmopolitan.com/politics/a14398183/starving-dying-polar-bear/). The nature of WJCL's display of the Video does not warrant a "fair use" defense. Upon Plaintiff's delivery of a DMCA-compliant takedown demand on November 20, 2020, Defendant Hearst Magazine Media, Inc. promptly removed the infringing display, but has yet to substantively respond to Plaintiff's demand for just compensation.  The nature of Cosmopolitan's display of the Video does not warrant a "fair use" defense.

C.  **INFRINGEMENTS ALLEGED BY PLAINTIFF CRISTINA MITTERMEIER**

127.    Plaintiff Mittermeier's Photo is filed as Exhibit "8" and the U.S. Copyright Office's copyright registration listing for this photo is attached as Exhibit "8A" and bears an Effective Date of February 8, 2018 and Registration number VA 2-087-796.

128.    Defendant Planck, LLC (d/b/a Patch Media) embedded Plaintiff Mittermeier's Photograph from her Instagram account in a post titled, "Starving Polar Bear Video Warns Of Impending Extinction," published on December 13, 2017 (available at: https://patch.com/us/ across-america/starving-polar-bear-video-warns-impending-extinction).  Sometime after Plaintiff's DMCA-compliant takedown notice of March 22, 2018, the infringing display was removed from the post, but Defendant Plank, LLC has refused just compensation to Plaintiff for its unauthorized use.  The nature of Patch Media's display of the Video does not warrant a "fair use" defense.

129.    Defendant CBS Interactive, Inc. (d/b/a PopCulture.com) embedded Plaintiff

Mittermeier's Photograph from her Instagram account in a post titled, "Viral Video of  Starving

Polar Bear is Breaking Hearts Online," published on December 11, 2017 (available at:

http://popculture.com/2017/12/10/viral-video-starving-polar-bear-starvation/).  Despite

Plaintiff's delivery of a DMCA-compliant takedown demand on November 24, 2020, Defendant

CBS Interactive Media, Inc. has yet to cease its infringing display of Plaintiff's video or provide

just compensation to Plaintiff.  The nature of PopCulture.com's display of the Video does not

warrant a "fair use" defense.

130.    Defendant Worldwide Media Services Group, Inc. (f/k/a American Media, Inc.)

(d/b/a Adventure Sports Network) embedded Plaintiff Mittermeier's Photograph from

SeaLegacy's Instagram account in a post published on or around December 8, 2017 that since

been removed (previously available at: https://www.adventuresportsnetwork.com/wildlife/

starving-polar-bear-scrounging-food-painful-message-video/).  The nature of Adventure Sports

Network's display of the Video does not warrant a "fair use" defense.

131.    Defendant Some Spider Inc. (d/b/a Scary Mommy) embedded Plaintiff

Mittermeier's Photograph from SeaLegacy's Instagram account in a post titled, "Biologist's

Heartbreaking Video Of Starving Polar Bear Goes Viral," published on December 9, 2017

(available at: https://www.scarymommy.com/paul-nicklen-video-starving-polar-bear/).  The

nature of Scary Mommy's display of the Photo does not warrant a "fair use" defense.

132.    Plaintiffs sent written notice as is noted above to most Defendants that each had

willfully infringed on Nicklen's Video and Mittermeier's Photo.

///

///

## VII. CAUSES OF ACTION

## COUNT 1: INFRINGEMENT OF COPYRIGHTS (17 U.S.C. §§ 106, 501)

## (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

133.    Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

134.    Plaintiff Nicklen is and was at all relevant times the sole copyright owner under United States copyright with respect to the copyrighted Video identified in Exhibits 4 and the registration in 4A.

135.    Plaintiff Mittermeier is and was at all relevant times the sole copyright owner under United States copyright with respect to the copyrighted Photo identified in Exhibits 8 and the registration in 8A.

136.    Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce their respective copyrighted works and to distribute the copyrighted works to the public.

137.    Each Defendant, without the permission, license, or consent from Plaintiffs, embedded either Nicklen's single copyrighted Video or Mittermeier's Photo as alleged above onto Defendants' websites using the Instagram or Facebook API, causing Nicklen's Video or Mittermeier's Photo to be displayed on the Defendant's website and distributing the Video or Photo to the public.

138.    Defendants have each violated Plaintiffs' exclusive rights of display (17 U.S.C. § 106(5)), reproduction (17 U.S.C. § 106(1)), and/or distribution (17 U.S.C. § 106(3)) of Nicklen's Video and/or Mittermeier's Photo as alleged above.

139.   Defendants never sought permission nor secured a license for the right to embed or display Plaintiffs' copyrighted works despite Plaintiffs each operating publicly available websites for the purpose of inviting offers from potential licensors. Nicklen also provided explicit licensing information in the text of his Instagram post where the Video was first posted. This is all considering numerous entities allegedly securing a license or consent from Plaintiff while others flagrantly violated the Copyright Act.

140.   Plaintiffs are also informed and believe that the foregoing acts of infringement have been willful and intentional or reckless, in total disregard of and with indifference to the rights to Plaintiffs' copyrights and exclusive rights under copyright, especially in light of certain Defendant's reputation as serial copyright infringers which creates a presumption of enhanced damages.

141.   As a result of Defendants' violation of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendants' infringements of the Copyrighted Video and Photo.  Alternatively, Plaintiff may elect to pursue actual damages pursuant to 17 U.S.C. § 504(b) based on what Defendants earned from the websites via advertising, impressions, user traffic etc., and savings from the avoidance of paying an agreed licensing fee.

142.   Plaintiffs are further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

143.   In the event that Nicklen's Video and Mittermeier's Photo are still published, displayed or associated with Defendants, the conduct of Defendants have caused, may still be causing, and will continue to cause Plaintiffs irreparable injury that cannot fully be compensated or measured in money unless enjoined and restrained by this Court. Plaintiffs have no adequate

remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief

prohibiting Defendants from further infringing Plaintiffs' copyrights, and ordering Defendants to

destroy all copies of images made or used in violation of Plaintiffs' exclusive rights and to

remove the Video and Photo from any website or blog that Defendants control, operate, or own.

## VIII. DAMAGES

144.    Defendants' conduct caused actual damages and/or are each liable for statutory

damages of up to $30,000.00 for each infringement for each Defendant entity that caused an

infringement or alternatively up to $150,000.00 for each willful infringement pursuant to 17

U.S.C. § 504.

## IX. JURY TRIAL DEMANDED

145.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully demand a trial by jury of

all the claims asserted in this Complaint so triable.

## X. RELIEF REQUESTED

146.    WHEREFORE, Plaintiffs respectfully request and pray that the Court enter

judgment on their behalf adjudging and decreeing that:

    a.  For an order certifying this lawsuit as a Defendant class action under Rule 23;

        an order appointing the named Defendants as Representatives for the

        Defendant Class, and appointing their counsel as counsel for all Defendants,

        or for interim Defendant class counsel under Rule 23(g), in the Court's

        discretion.

    b.  For declaratory relief under the Federal Copyright Act and for an injunction

        providing: "Defendants shall be and hereby are enjoined from directly or

        indirectly infringing Plaintiffs' rights under federal or state law in the

Copyrighted Video and Photo, whether now in existence or later created, that is owned or controlled by Plaintiffs, including without limitation by using the Internet, the Instagram embedding API, or any online media distribution system to reproduce (i.e. download) any of Plaintiff Nicklen's Video or Mittermeier's Photo, to distribute (i.e. cause to be displayed) any of Plaintiffs' copyrighted works, or to make any of Plaintiffs' works available for distribution to the public, except pursuant to a lawful license or with the express authority of each Plaintiff. Defendants also shall destroy all copies of Plaintiffs' photos that Defendants have downloaded onto any computer hard drive or server and remove the "embed code" pointing to the Copyrighted Video or Photos from the internet or Instagram that Defendants have control or ownership interest in."

c.   For Plaintiffs to be awarded either: (i) Plaintiffs' actual damages and Defendants' profits, gains, or advantages of any kind attributable to Defendants' infringement of Plaintiffs' copyrighted works; or (ii) alternatively, statutory damages of up to $30,000.00 per infringement or up to $150,000.00 for each instance of willful infringement of Plaintiffs' Copyrighted works pursuant to 17 U.S.C. § 504.

d.   For Defendants to be required to account for all profits, income, receipts, or other benefits derived by Defendants as a result of their unlawful conduct.

e.   For Plaintiffs' costs and expenses in this action, including all reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1201 et. seq. and pursuant to Rule 23 as the case may be.

f.   For Plaintiffs to be awarded pre-judgment interest from the time of the

infringements.

g.   For such other and further relief as the Court may deem just and proper.

Dated: This 10th day of December 2020.

Respectfully submitted,

By: /s/ James Bartolomei Esq.
James Bartolomei Esq.
Duncan Firm, P.A.
Of Counsel
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com

and

Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
347-855-4008
914-992-7135 fax
bryan@hobenlaw.com

Attorneys for Plaintiffs

49