# EXHIBIT 1

Transcript from December 1, 2020 Telephone Conference in
*Sinclair v. Mashable*,1:18-cv-00790-KMW-BCM (Docket #75)

```
                     UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #18cv790
  SINCLAIR,                         : 1:18-cv-00790-KMW-BCM

                     Plaintiff,     :

    - against -                     :

  ZIFF DAVIS, LLC, MASHABLE,        :
                                        New York, New York
                     Defendant.     : December 1, 2020

-----------------------------------: TELEPHONE CONFERENCE

                       PROCEEDINGS BEFORE
                THE HONORABLE BARBARA C. MOSES,
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:            THE DUNCAN FIRM
                          BY:  JAMES BARTOLOMEI, ESQ.
                          50 West 90th Street, 5A
                          New York, New York  10024

                          HOBEN LAW
                          BY:  BRYAN HOBEN, ESQ.
                          112 Main Street, 1st Floor
                          Peekskill, New York  10566

For Defendant -           COWAN, DEBAETS, ABRAHAMS &
Mashable Inc.:            SHEPPHARD LLP
                          BY:  NANCY WOLFF, ESQ.
                             LINDSEY EDELSTEIN, ESQ.
                          41 Madison Avenue, 38th Floor
                          New York, New York 10010


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

```
APPEARANCES (CONTINUED):

For Defendant -          KIRKLAND & ELLIS LLP
Facebook:                BY:  DALE CENDALI, ESQ.
                              JOHANNA SCHMITT, ESQ.
                              ARI LIPSITZ, ESQ.
                         601 Lexington Avenue
                         New York, New York  10022
```

```
 1                                                   4

 2              THE CLERK:  Good morning, this is case number

 3   18cv790, Stephanie Sinclair versus Mashable Inc.  Counsel,

 4   please state your appearances for the record and please

 5   spell your names, beginning with the plaintiff.

 6              MR. JAMES BARTOLOMEI:  Good morning, this is

 7   James Bartolomei, B-A-R-T-O-L-O-M-E-I, I'm with the

 8   Duncan Firm, and I represent plaintiff, Stephanie

 9   Sinclair.

10              THE COURT:  Good morning.

11              MR. BRYAN HOBEN:  Hi, this is plaintiff's

12   attorney, Bryan Hoben, H-O-B-E-N, with the firm Hoben

13   Law, I represent the plaintiff, Stephanie Sinclair.

14              THE COURT:  Good morning. And that's it for

15   plaintiffs, correct?

16              MR. HOBEN:  Yes, correct.

17              THE COURT:  All right, who's on for Mashable?

18              MS. NANCY WOLFF: Yes, good morning, Your

19   Honor, this is Nancy Wolff, W-O-L-F-F, at Cowan,

20   DeBaets, Abrahams & Sheppard, and I'm with my

21   colleague, Lindsey Edelstein, E-D-E-L-S-T-E-I-N. I

22   think I got that right.

23              THE COURT:  And good morning.  And for

24   Facebook, please?

25              MS. DALE CENDALI:  Good morning, Your Honor,
```

1                                                         5

2   this is Dale Cendali, D-A-L-E C-E-N-D-A-L-I, of the

3   law firm Kirkland & Ellis, along with my colleagues,

4   Johanna Schmitt, J-O-H-A-N-N-A, Schmitt, S-C-H-M-I-T-

5   T, and Ari Lipsitz, A-R-I L-I-P-S-I-T-Z.  We are

6   counsel for third party, Facebook, in this matter.

7             THE COURT:  Thank you very much and thank you

8   for rejoining us.

9             MS. CENDALI:  Thank you, Your Honor.

10            THE COURT:  We only have the one motion before

11  us today and that is Facebook's motion for a

12  protective order with respect to the 30(B)(6)

13  (indiscernible).  I'm not terribly optimistic because

14  you would have told me this if it were true, but is

15  there any chance that the parties have had any further

16  discussions and agreed to any compromise, whatsoever?

17            MS. CENDALI:  Well as it happens, Your Honor,

18  this is Ms. Cendali, we have, though not on the

19  material issues.  On Friday night around 8 p.m.,

20  plaintiff's counsel sent us a proposal to, I think it

21  was intended to try to narrow the deposition topics.

22  So we had another meet and confer yesterday with

23  plaintiff's counsel to discuss it.  And will recount a

24  few issues have been eliminated or clarified, so

25  that's great, but we are still at an impasse at some

```
 1                                                   6
 2  of the core basic issues. So sadly we will have to
 3  have this conference today, Your Honor.
 4          THE COURT:  All right, well, Ms. Cendali, why
 5  don't you tell me what, in your view, has been
 6  narrowed or agreed upon and then I'll let plaintiff
 7  tell me if they view that any differently.
 8          MS. CENDALI:  Well I think that it might be
 9  easier, because some things are more in terms of, of,
10  how do I put this, in terms of some clarity on some of
11  the topics, I think it would be more efficient to go
12  through it issue by issue and we can explain where
13  things are now in, with regard to each one.
14          I can tell you definitively though, and
15  counsel, I'm sure, will correct me if I'm wrong, the
16  topic 1.K which seeks testimonies about Instagram's
17  dispute resolution procedures, plaintiffs agreed
18  yesterday to strike that topic as duplicative of topic
19  1.B.  So that one at least is moot.  Other things are
20  more nuanced than that.
21          THE COURT:  If you think it would be more
22  sensible to just go through it starting with 1.A,
23  that's fine, I'll follow along.
24          MS. CENDALI:  Okay.  Well I think that if you
25  permit me, Your Honor, we were trying to simplify this
```

7

and what we ended up doing obviously, all with Your

Honor's permission, is to group things in three

buckets. Because I think that it's easier to

understand it by category. Because otherwise if we go

through it topic by topic, there will be a lot of

duplication. And the three buckets are topics, the

first bucket is topics that we think in the subpoena

are overbroad and should be narrowed, the second

bucket are topics we think are not relevant at all and

should be stricken entirely, and then the third bucket

is just relating to the catchall document request at

the end.

        And in terms of going through the buckets, I

think it's important because this informs all,

Facebook's entire position with regard to this and

what's relevant and relates to all the different

topics, and that's the scope of Facebook's involvement

in this case and the scope of what the relevant issue

is.

        As we understand it from Judge Wood's opinion,

the issue in this case with regards to Facebook is

whether Instagram's terms of use and platform policy

granted a sublicense to defendant, Mashable, to embed

the Sinclair photograph in question in March of 2016.

8

1

2      THE COURT:  Well, yes and no.  It's not clear

3  to me from Judge Wood's second opinion whether the

4  question is Sinclair specific or more generic.  And

5  I'm not sure that Judge -- I'm not sure that Judge

6  Wood knew the answer to that either.  The parties may.

7  Is the question here a generic one, i.e. would the

8  answer apply to anyone in Ms. Sinclair's position at

9  the time that the Sinclair photograph was embedded on

10  the Mashable website through to the time when it was

11  taken down?  Or is there an actual question here about

12  whether some human being did something specifically

13  relating to Sinclair that could have created a

14  sublicense, it was not just a result of the same

15  algorithm didn't apply to everybody on Insta.

16  (indiscernible) question?

17      MS. CENDALI:  I think, Your Honor, I see your

18  point but I think the, it's not that mysterious in

19  that Facebook has already gone on record, as the

20  parties have talked about in the June *Ars Technica*

21  article.  And as we explained to plaintiff's counsel

22  yesterday, plaintiff's terms of use and platform

23  policy that were in effect as of March of 2016 do not

24  a sublicense. Facebook is free to, under its policies

25  as Judge Wood noted, to grant such sublicenses, but

9

they did not do that.  And they did not do that for anybody and the anybody would, of course, then include Mashable in this situation.

THE COURT:  So just to pull the lens out for a moment here and understand where all the moving pieces are, I understand that these issues have broad significance beyond Ms. Sinclair and Mashable, but I also understand that this case is about Ms. Sinclair and Mashable. And what's relevant here has to be limited to what's relevant to Ms. Sinclair's claims against Mashable.  But if I understand what you're telling me on behalf of Facebook, you're telling me that essentially that there was no sublicense here, or at least not one that was created by virtue of the Instagram API or terms of use.  And, therefore, not only does Ms. Sinclair have a viable copyright claim against Mashable because, at least as alleged in the complaint, Mashable requested and did not obtain from her an individual license, that this is going to turn out to be true for every photographer whose photographs were embedded via the Instagram API and somebody else's website and who didn't individually negotiate a license, right?

MS. CENDALI:  Well that would be the case in