**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**PAUL NICKLEN and**
**CRISTINA MITTERMEIER,**

   *Plaintiffs*,

v.

**SINCLAIR BROADCAST GROUP, INC.,**
**WCWN LICENSEE, LLC (d/b/a WCWN LLC;**
**d/b/a WCWN; d/b/a CW15 Albany), and others**
**similarly situated as WCWN LICENSEE, LLC,**
**WCWN, LLC,**
**KDSM, LLC,**
**KDSM LICENSEE, LLC,**
**CHESAPEAKE MEDIA I, LLC,**
**KRNV, LLC,**
**KRXI, LLC,**
**KVCW, LLC,**
**KVMY, LLC,**
**KATV, LLC,**
**KATV LICENSEE, LLC,**
**KTUL, LLC,**
**KTUL LICENSEE, LLC,**
**WLUK LICENSEE LLC,**
**WJAR LICENSEE LLC,**
**WCWF LICENSEE, LLC,**
**WBMA LICENSEE, LLC,**
**WSET LICENSEE, LLC,**
**WVTV LICENSEE, INC.,**
**RALEIGH (WRDC-TV) LICENSEE, LLC,**
**BIRMINGHAM (WABM-TV) LICENSEE, INC.,**
**WICS LICENSEE, LLC,**
**KOKH LLC,**
**KOKH LICENSEE, LLC,**
**MILWAUKEE TELEVISION LLC,**
**WCGV LICENSEE, LLC,**
**SINCLAIR MEDIA III, INC.,**
**WCHS LICENSEE, LLC,**
**WVAH LICENSEE, LLC,**
**SINCLAIR PROPERTIES, LLC,**
**WDKA LICENSEE, LLC,**
**WMMP LICENSEE, LLC,**
**SINCLAIR TELEVISION OF EL PASO, LLC,**

**Case 1:20-cv-10300-JSR-SN**

**DEMAND FOR JURY TRIAL**
**CLASS ACTION**

1

**KDBC LICENSEE, LLC,**
**WGME, INC.,**
**WGME LICENSEE, LLC,**
**WSMH, INC.,**
**WSMH LICENSEE, LLC,**
**WUCW LICENSEE, LLC,**
**KABB LICENSEE, LLC,**
**KDNL LICENSEE, LLC,**
**KEYE LICENSEE, LLC,**
**KFDM LICENSEE, LLC,**
**KFOX LICENSEE, LLC,**
**KGAN LICENSEE, LLC,**
**KHGI LICENSEE, LLC,**
**KHQA LICENSEE, LLC,**
**KOCB LICENSEE, LLC,**
**KPTH LICENSEE, LLC,**
**KRCG LICENSEE, LLC,**
**KSAS LICENSEE, LLC,**
**KTVL LICENSEE, LLC,**
**KTVO LICENSEE, LLC,**
**KUTV LICENSEE, LLC,**
**KVII LICENSEE, LLC,**
**WACH LICENSEE, LLC,**
**WEAR LICENSEE, LLC,**
**WFGX LICENSEE, LLC,**
**WFXL LICENSEE, LLC,**
**WGFL LICENSEE, LLC,**
**WGXA LICENSEE, LLC,**
**WKRC LICENSEE, LLC,**
**WLFL LICENSEE, LLC,**
**WLOS LICENSEE, LLC,**
**WMSN LICENSEE, LLC,**
**WNAB LICENSEE, LLC,**
**WNWO LICENSEE, LLC,**
**WOAI LICENSEE, LLC,**
**WOLF LICENSEE, LLC,**
**WPBN LICENSEE, LLC,**
**WPDE LICENSEE, LLC,**
**WPEC LICENSEE, LLC,**
**WPGH LICENSEE, LLC,**
**WRGB LICENSEE, LLC,**
**WRLH LICENSEE, LLC,**
**WSYX LICENSEE, LLC,**
**WTGS LICENSEE, LLC,**
**WTOV LICENSEE, LLC,**
**WTTO LICENSEE, LLC,**

**WTVC LICENSEE, LLC,**
**WVTX LICENSEE, LLC,**
**WTVZ LICENSEE, LLC,**
**WUHF LICENSEE, LLC,**
**WUTV LICENSEE, LLC,**
**WUXP LICENSEE, LLC,**
**WWHO LICENSEE, LLC,**
**WWMT LICENSEE, LLC,**
**WXLV LICENSEE, LLC,**
**WZTV LICENSEE, LLC,**
**SINCLAIR TELEVISION OF ABILENE, LLC,**
**SINCLAIR TELEVISION OF BRISTOL, LLC,**
**SINCLAIR TELEVISION OF MONTANA, LLC,**
**WCTI LICENSEE, LLC,**
**SINCLAIR TELEVISION OF FRESNO LLC,**
**KMPH LICENSEE, LLC,**
**WJAC LICENSEE, LLC,**
**SINCLAIR TELEVISION OF OMAHA, LLC,**
**KPTM LICENSEE, LLC,**
**SINCLAIR TELEVISION OF BAKERSFIELD,**
**LLC,**
**SINCLAIR TELEVISION OF PORTLAND, LLC,**
**SINCLAIR TELEVISION OF WASHINGTON,**
**INC.,**
**SINCLAIR KENNEWICK LICENSEE, LLC,**
**SINCLAIR SEATTLE LICENSEE, LLC,**
**SINCLAIR BOISE LICENSEE, LLC,**
**SINCLAIR YAKIMA LICENSEE, LLC,**
**SINCLAIR LEWISTON LICENSEE, LLC,**
**SINCLAIR EUGENE LICENSEE, LLC,**
**KAME, LLC,**
**WICD LICENSEE, LLC,**
**KFXA LICENSEE LLC,**
**KUPN LICENSEE LLC,**
**KUQI LICENSEE, LLC,**
**WSTQ LICENSEE, LLC,**
**WUPN LICENSEE, LLC,**
**SINCLAIR TELEVISION OF CALIFORNIA,**
**LLC,**
**SINCLAIR TELEVISION OF SEATTLE, INC.,**
**SINCLAIR TELEVISION OF OREGON, LLC,**
**SINCLAIR TELEVISION OF WASHINGTON**
**INC.,**
**SINCLAIR LA GRANDE LICENSEE, LLC,**
**HEARST COMMUNICATIONS INC.,**
**HEARST CORPORATION,**

**T&R PRODUCTIONS, LLC**
**(d/b/a RT Network),**
**HEARST PROPERTIES INC.**
**(d/b/a KCCI, WESH, WLKY, WMTW, WMUR,**
**WPBF, and WXII),**
**HEARST STATIONS INC.**
**(d/b/a d/b/a KMBC, and KSBW),**
**HEARST TELEVISION INC.**
**(d/b/a (d/b/a KCRA and WBAL),**
**OHIO/OKLAHOMA HEARST TELEVISION**
**INC. (d/b/a KOCO),**
**JACKSON HEARST TELEVISION INC.**
**(d/b/a WAPT),**
**WJCL HEARST TELEVISION LLC**
**(d/b/a WJCL),**
**WVTM HEARST TELEVISION, Inc., and**
**PLANK, LLC**
**(d/b/a Patch Media),**

*Defendants.*

### SECOND AMENDED COMPLAINT – CLASS ACTION

Plaintiffs respectfully allege their second amended complaint and pursuant to Fed. R. Civ.

P. Rule 23 (Plaintiff Paul Nicklen only), state as follows:

### I.  INTRODUCTION

1.     This is a case about willful copyright infringement by numerous for-profit media

publishers of a "starving polar bear" video[1] (the "Video") captured by Plaintiff Paul Nicklen, and

one photograph[2] (the "Photo") captured by Plaintiff Cristina Mittermeier of the same subject

matter, in the moments before the starving bear passed away. Plaintiffs risked life and limb to

capture the rare video footage that was viewed by millions worldwide and licensed by numerous

entities throughout the world such as *International Business Times* ($6,000) *The New York*

*Times*, *The Washington Post*, TEN: Publishing Media, LLC and American Media, Inc. ($6,500)

---

[1] See the Video at: https://www.instagram.com/p/BcU-6PsAoIp/
[2] See the Photo at https://www.instagram.com/p/BcU_8c8FDA8/

4

and FoxNews.com. Licensees of the Video, of which there were about two dozen entities, purchased actual licenses (with terms) for as much as $6,500.00. Corporate publishers that neither secured a license nor have a valid defense are being sued either individually or as part of Defendant classes described below pursuant to FRCP 23.

2.      Plaintiff Paul Nicklen is an iconic, renowned Canadian photographer, filmmaker and marine biologist. Nicklen's work is regularly featured in National Geographic Magazine, the New York Times, and many other publications with a global reach. He has received numerous international awards for his work including six (6) with World Press Photo, three (3) with Pictures of the Year International, ten (10) in the BBC Wildlife Photographer of the Year competition, and in 2012 Mr. Nicklen was the inaugural recipient of the Biogems Visionary Award from the National Resources Defense Counsel. Nicklen is also a National Geographic Fellow and the cofounder and Director of conservation group, SeaLegacy. Nicklen has almost 7 million Instagram followers on his public profile, https://www.instagram.com/paulnicklen/.

3.      In addition to being one of the world's most acclaimed nature photographers, Nicklen is a sought-after speaker, a TED Talks legend and author.  In the past two decades, Nicklen has collaborated with scientists, filmmakers, conservationists and explorers to create awareness and inspire action for global issues such as climate change. Nicklen has a web site that receives inquiries for licensing, speaking, film and photography projects at https://paulnicklen.com/ and, for a limited time, he contracted with Caters News Agency for licensing of the Video. Caters currently has an ongoing obligation to refer all licensing inquiries for the Video directly to Nicklen.

4.      Plaintiff Cristina Mittermeier is an acclaimed Mexican photographer and filmmaker that often collaborates with Plaintiff Nicklen on capturing rare, wildlife images and

videos throughout the world in some of the harshest, almost inaccessible regions on planet Earth. Mittermeier's work is regularly featured in *National Geographic Magazin*e, *Time* magazine, and numerous other global publications. She has received numerous international awards for her work including the Mission Award from the North American Nature Photography Association (NANPA), the Smithsonian Conservation Photographer of the Year Award, among many others and has been recognized as one of the World's Most Influential Outdoor Photographers by *Outdoor Magazine*. Mittermeier was named one of *National Geographic*'s 2018 Adventurers of the Year. She is a member of the World Photographic Academy, a Sony Artisan of Imagery, and co-founder and Managing Director of conservation group, SeaLegacy, along with Nicklen. Mittermeier has 1.4 million followers on her public Instagram account, https://www.instagram.com/mitty.  Mittermeier also licenses her work and invites inquiries at https://cristinamittermeier.com/contact/.

5.      Plaintiffs amend their complaint for a second time pursuant to the Court's Fed. R. Civ. P. 15(a)(2) order on February 18, 2021, and pursuant to Fed. R. Civ. P. 23, allege a Defendant class related to the Video only. The Defendant class generally involves only Sinclair Broadcast Group, Inc. entities, a common set of operative facts and the Copyright Act, and which this dispute can be resolved by the Court in one-stroke for liability, one-stroke for common defenses, if any, available to Defendants and one-stroke for a damages amount for a finding for each infringement. As background, the factual allegations common to each infringement of the Video are:

a.   On December 5, 2017, Plaintiff Nicklen posted his copyrighted Video depicting a starving polar bear in the Canadian Arctic filmed in July 2017 to his public Instagram and Facebook accounts with an explicit written notice in

the caption directing prospective licensees of the Video to contact Caters

News Agency, Plaintiff Nicklen's agent for the Video at that time, to obtain a

license;

b.  On December 7, 2017, *National Geographic*, with permission from Nicklen,

published the Video Plaintiff Nicklen's (slightly edited), that included text

throughout its duration, and published on its website accompanying an article

about Plaintiff Nicklen's experience making the Video, quoting him directly

from an interview, and the plight of the world's polar bears in the face of

global warming;[3]

c.  Between December 8, 2017 and December 13, 2017, hundreds or perhaps

thousands of online publishers (all operating through various independent

companies) displayed the Video in posts that purported to comment on the

Video's "viral" nature. In reality, these posts were often little more than "cut

and paste jobs" that used slightly edited or completely verbatim portions of

the original captions accompanying Plaintiff Nicklen's Video on his Facebook

and Instagram accounts and/or the text of the *National Geographic* article. In

other words, lazy journalism at its best but more likely straight up plagiarism.

None of the Defendants' posts displaying the Video contained text that had

any meaningful transformative value.  Moreover, while nearly every

Defendant incorporated the exact same segments of text from the *National*

*Geographic* article, few used the *National Geographic* video. Instead, most

Defendants embedded the Video Plaintiff Nicklen posted to his Instagram and

---

[3] *Available at*: https://www.nationalgeographic.com/news/2017/12/polar-bear-starving-arctic-sea-ice-melt-climate-change-spd/ (See also Ex. 6).

Facebook's account just days before, despite the explicit and clear licensing directive in its caption, putting the world on notice that licensing was required.

  d.  No Defendant paid Nicklen a licensing fee for the Video before they chose to publish it.

6.     Facebook, Inc., through its counsel, admitted in open court on December 1, 2020 in a discovery conference in *Sinclair v. Mashable, Inc.* that Instagram, wholly owned by Facebook, has never once given a third-party publisher a license to embed a photo or video from another user's Instagram account: "Facebook is free to, under its policies as Judge Wood noted, to grant such sublicenses [to videos or photos on Instagram], but they did not do that. And they did not do that for anybody and the anybody would, of course, then include Mashable in this situation." *See Sinclair v. Mashable*, (18-cv-790), Tr. 8:24 to 9:14 (Dec. 1, 2020) attached as Ex. 1.  This "anybody" includes every Defendant in this case and every embedder publisher that has ever used the Instagram or Facebook API embed tool to cause photos or videos to be displayed in their third party, for profit websites.

7.     This complaint arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq. (the "Copyright Act").

8.     Plaintiffs separately allege that each Defendant is liable for direct and willful copyright infringement of Plaintiff's respective works in violation of 17 U.S.C. §§ 106 and 501.

## II. PARTIES

9.     Plaintiff Paul Nicklen ("Nicklen" or "Plaintiff Nicklen") is a resident of and domiciled in Canada.

10.     Plaintiff Cristina ("Mittermeier" or "Plaintiff Mittermeier") is a resident of and domiciled in Canada.

11.     Defendant Sinclair Broadcast Group, Inc. ("Sinclair"), is a Maryland corporation located at 10706 Beaver Dam Road, Hunt Valley, MD 21020, and owns WCWN Licensee LLC, an affiliated entity that has customers in this District, engages in media business in this District, through its corporate actions and corporate conduct and has purposefully availed itself of the privileges of conducting business in this district.  See Exhibit 2 for list of Sinclair affiliates that likely infringed on the Video. Plaintiff Nicklen names as many as he can find evidence of infringement of the Video in this second amended complaint for their independent acts of infringement and reserves the right add additional parties should facts support the naming of additional Sinclair affiliates should a Sinclair Class not be certified.

12.     Defendant WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) is a Maryland company with its principal place of business in Schenectady, New York.  Defendant WCWN is owned in full or part by Sinclair Broadcast Group, Inc.  It purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by broadcasting to cable television subscribers in Dutchess County, New York through cable TV carriers such as Spectrum Cable. (See Exhibit "3.") is likely typical and common of each independent Sinclair Broadcast Group affiliates and should be designated and named as the class representative for the Sinclair Class of Defendants more fully described below.

13.     Defendant WCWN LLC ("WCWN") is a Delaware company that may have been the operating entity for WCWN Channel 13, and may have been a successor in interest, acquired by or merged with Defendant WCWN Licensee, LLC as the operating entity for this stations website where the Video was embedded.  Defendant WCWN purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by

broadcasting to cable television subscribers in Dutchess County, New York through carriers such as Spectrum Cable.

14.     Defendants KDSM, LLC and KDSM Licensee, LLC are Maryland companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station.

15.     Defendant Chesapeake Media I, LLC and KRNV, LLC are Nevada companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

16.     Defendant KRXI, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

17.     Defendant KVCW, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

18.     Defendant KVMY, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself

to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

19.     Defendants KATV, LLC and KATV Licensee, LLC are Nevada companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

20.     Defendants KTUL, LLC and KTUL Licensee, LLC are Nevada companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

21.     Defendant WLUK Licensee LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

22.     Defendant WJAR Licensee LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

23.     Defendant WCWF Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

24.     Defendant WBMA Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

25.     Defendant WSET Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

26.     Defendant WVTV Licensee, Inc. is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

27.     Defendant Raleigh (WRDC-TV) Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the

Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

28.     Defendant Birmingham (WABM-TV) Licensee, Inc is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

29.     Defendant WICS Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

30.     Defendants KOKH LLC and KOKH Licensee, LLC are Maryland companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

31.     Defendant Milwaukee Television LLC is a Wisconsin company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

32.     Defendant WCGV Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

33.     Defendants Sinclair Media III, Inc. and WCHS Licensee, LLC are Maryland companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

34.     Defendant WVAH Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

35.     Defendants Sinclair Properties, LLC and WDKA Licensee, LLC are Virginia companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

36.     Defendant WMMP Licensee, LLC is a Virginia company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

37.     Defendants Sinclair Television of El Paso, LLC and KDBC Licensee, LLC are Delaware companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

38.     Defendants WGME, Inc. and WGME Licensee, LLC are Maryland companies that likely control or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

39.     Defendant WSMH, Inc. and WSMH Licensee, LLC are Maryland companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

40.     Defendant WUCW Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

41.     Defendant KABB Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

42.     Defendant KDNL Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

43.     Defendant KEYE Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

44.     Defendant KFDM Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

45.     Defendant KFOX Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

46.     Defendant KGAN Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

47.     Defendant KHGI Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

48.     Defendant KHQA Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

49.     Defendant KOCB Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

50.     Defendant KPTH Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

51.     Defendant KRCG Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

52.     Defendant KSAS Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

53.     Defendant KTVL Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

54.     Defendant KTVO Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

55.     Defendant KUTV Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

56.     Defendant KVII Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

57.     Defendant WACH Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

58.     Defendant WEAR Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

59.     Defendant WFGX Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

60.     Defendant WFXL Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

61.     Defendant WGFL Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

62.     Defendant WGXA Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

63.     Defendant WKRC Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

20

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

64.     Defendant WLFL Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

65.     Defendant WLOS Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

66.     Defendant WMSN Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

67.     Defendant WNAB Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

68.     Defendant WNWO Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

69.     Defendant WOAI Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

70.     Defendant WOLF Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

71.     Defendant WPBN Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

72.     Defendant WPDE Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

73.     Defendant WPEC Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

74.     Defendant WPGH Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

75.     Defendant WRGB Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

76.     Defendant WRLH Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

77.     Defendant WSYX Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

78.     Defendant WTGS Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

79.     Defendant WTOV Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

80.     Defendant WTTO Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

81.     Defendant WTVC Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

82.     Defendant WVTX Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

83.     Defendant WTVZ Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

84.     Defendant WUHF Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

85.     Defendant WUTV Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

86.     Defendant WUXP Licensee, LLC (is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

87.     Defendant WWHO Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

88.     Defendant WWMT Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

89.     Defendant WXLV Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

90.     Defendant WZTV Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

91.    Defendant Sinclair Television of Abilene, LLC is a Texas company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

92.    Defendant Sinclair Television of Bristol, LLC is a Virginia company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

93.    Defendant Sinclair Television of Montana, LLC is a Delaware company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

94.    Defendant WCTI Licensee, LLC is a Delaware company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

95.     Defendants Sinclair Television of Fresno LLC and KMPH Licensee, LLC are Delaware companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

96.     Defendant WJAC Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

97.     Defendants Sinclair Television of Omaha, LLC and KPTM Licensee, LLC are Delaware companies that likely control or operate a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

98.     Defendant Sinclair Television of Bakersfield, LLC is a Delaware company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

99.     Defendant Sinclair Television of Portland, LLC is a Delaware company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the

Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

100.     Defendant Sinclair Television of Washington, Inc. is a Washington company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

101.     Defendant Sinclair Kennewick Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

102.     Defendant Sinclair Seattle Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

103.     Defendant Sinclair Boise Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

104.    Defendant Sinclair Yakima Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

105.    Defendant Sinclair Lewiston Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

106.    Defendant Sinclair Eugene Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

107.    Defendant KAME, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

108.    Defendant WICD Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of

New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

109.    Defendant KFXA Licensee LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

110.    Defendant KUPN Licensee LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

111.    Defendant KUQI Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

112.    Defendant WSTQ Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

113.     Defendant WUPN Licensee, LLC is a Maryland company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

114.     Defendant Sinclair Television of California, LLC is a California company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

115.     Defendant Sinclair Television of Seattle, Inc. is a Washington company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

116.      Defendant Sinclair Television of Oregon, LLC is a Delaware company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

117.     Defendant Sinclair Television of Washington Inc. is a Washington company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the

Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

118.    Defendant Sinclair La Grande Licensee, LLC is a Nevada company that likely controls or operates a website that published the Video and upon information and belief purposefully submitted itself to the jurisdiction of the United States District Court for the Southern District of New York by offering subscribers in the District access to the station as New York is the unofficial media capital of the United States.

119.    Defendant Hearst Communications Inc. ("Hearst") is a Delaware corporation with its principal place of business in the district. Hearst owns and operates numerous television and print media entities.

120.    Defendant T&R Productions, LLC (d/b/a RT Network or Russian News) is a District of Columbia company, with its principal place of business at 1325 G Street NW Suite 250, Washington, DC 20005 and can be served as the same address. RT Network claims that it is "an autonomous, non-profit organization that is publicly financed from the budget of the Russian Federation." Defendant T&R Upon information and belief, RT Network has registered to do business in New York under DOS ID 5057413.

121.    Defendant Hearst Corporation ("Hearst") is a Delaware corporation with its principal place of business in New York.

122.    Defendant Hearst Properties, Inc. (d/b/a KCCI, WESH, WLKY, WMTW, WMUR, WPBF, and WXII) ("Hearst Properties"), is a Delaware company that owns and operates websites for these television stations.  Each web site for KCCI (https://www.kcci.com/), WESH (www.wesh.com),  WLKY (www.wlky.com), WMTW(https://www.wmtw.com/) , WMUR (https://www.wmur.com/), WPBF (https://www.wpbf.com/), and WXII

(https://www.wxii12.com/) have terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York." Therefore, Hearst Properties submits itself to the jurisdiction of this court.

123.    Defendant Hearst Stations Inc. (d/b/a KMBC, and KSBW)("Hearst Stations") is a Delaware corporation with its principal place of business at 300 West 57th Street, New York, New York 10019. It operates websites for KMBC (https://www.kmbc.com/) and KSBW (https://www.ksbw.com/) and have terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York." Therefore, Hearst Stations submits itself to the jurisdiction of this court.

124.    Defendant Hearst Television, Inc. (d/b/a KCRA and WBAL) ("Hearst Television") is a Delaware corporation with its principal place of business at 300 West 57th Street, New York, New York 10019.  It operates websites for KCRA (https://www.kcra.com/) and WBAL (https://www.wbaltv.com) and have terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, Hearst Television submits itself to the jurisdiction of this court.

125.    Defendant Ohio/Oklahoma Hearst Television Inc. (d/b/a KOCO) is a Delaware corporation with its principal place of business at 300 West 57th Street, New York, New York 10019.  It operates websites KOCO (https://www.kmbc.com/) and has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in

New York City, New York." Therefore, Ohio/Oklahoma Hearst Television Inc. submits itself to the jurisdiction of this court.

126.     Defendant Jackson Hearst Television Inc. (d/b/a WAPT) ("Jackson Hearst") is a Delaware corporation with its principal place of business at 00 West 57th Street, New York, New York 10019.  It operates a website for WAPT (https://www.wapt.com/) and has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, Jackson Hearst submits itself to the jurisdiction of this court.

127.     Defendant WVTM Hearst Television, Inc. ("WVTM"), is a Delaware corporation with its principal place of business at 00 West 57th Street, New York, New York 10019. It operates a website for WVTM (https://www.wvtm13.com/) and has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York." Therefore, WVTM submits itself to the jurisdiction of this court.

128.     WJCL Hearst Television, LLC (d/b/a WJCL) has its principal at 300 West 57th Street, 39fl, New York, NY 10019, and is a Delaware company that owns and operates the website https://www.wjcl.com/. The website has terms of service that require all "[c]laims of *infringement* or misappropriation of the other party's patent, *copyright*, trademark, or trade secret shall be exclusively brought in the state and federal courts located in New York City, New York."  Therefore, WJCL submits itself to the jurisdiction of this court.

129.     Defendant Planck, LLC (d/b/a Patch Media) is a Delaware company with its principal place of business at 134 W. 29th Street, 11th Floor, New York, NY 10001.

### III. JURISDICTION AND VENUE

130.    This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

131.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391 because each of Defendants' respective principal places of business can be found in this District, or pursuant to 28 U.S.C. § 1400(a)(venue for copyright cases), Defendants each availed themselves in this District. New York City is considered the media capital of the world and certainly the United States where discovery will show that all defendants in this case purposefully availed themselves to the District either through customers/subscribers, or financial/banking interests or both.

132.    This Court has *in personam* jurisdiction over Defendants because Defendants each availed themselves of the privileges of conducting business in this district and the State of New York and incurred a benefit from the copyright infringements, thus it is reasonable for each Defendant to submit to the jurisdiction of this district court.  Certain Defendants also represented that they choose this district for copyright disputes regardless of where the operating entity existed.

### IV. TOLLING OF THE STATUTE OF LIMITATIONS

133.    Throughout the time period relevant to this action, Defendants, including each independent Sinclair-affiliated entity, affirmatively suppressed, concealed, and omitted from Plaintiffs their acts and omissions violating Plaintiffs' rights. Defendants willfully and knowingly kept Plaintiffs ignorant of vital information essential to Plaintiffs' rights and violations of Plaintiffs' rights essential to pursuit of a claim against the Defendants, and as a

result, Plaintiffs could not have discovered the violation of rights, even upon reasonable exercise of due diligence.

134.    Defendants were aware that their actions were violating Plaintiffs' rights, but continued to violate Plaintiffs' rights, for their own financial gain, while suppressing, concealing and omitting this information from the Plaintiffs.

## V. CLASS ALLEGATIONS

135.    Plaintiff Nicklen brings his claims against each of the independent Hearst entities (all the Hearst identities may be known), each of the members of the independent Sinclair Class Defendants, and all other Defendants similarly situated, under Fed. R. Civ. P. 23(a), and for statutory damages.  Pursuant to Fed. R. Civ. P. Rule 23(a) "[o]ne or more members of a class may ... be sued as representative parties on behalf of all members." Class Definition and Ascertainability:

Plaintiff Nicklen proposes the following class definition:

**"All persons and entities without a valid license or permission who published, embedded, or caused to be displayed Plaintiff Nicklen's "starving polar bear" Video into a Defendant's website post using the Instagram or Facebook embedding tool (API)." ("Defendant Class").**

Alternatively, Plaintiff Nicklen alleges a separate Sinclair Class definition:

**"All Sinclair-affiliated entities without a valid license or permission who published, embedded, or caused to be displayed Plaintiff Nicklen's "starving polar bear" Video into an independently operated Sinclair-affiliated television or radio station website post using the Instagram or Facebook embedding tool (API)." ("The Sinclair Class").**

136.    The exact number of Defendant class members is unknown, but is reasonably ascertainable with objective criteria, especially the Sinclair Class. The actual number is anticipated to be several hundred, located all over fifty states. Thus, under Fed. R. Civ. P. 23(a)(1), the Defendant class is so numerous that joinder of all members may be impracticable.

37

Out of an abundance of caution, Plaintiff Nicklen has named all independently operated Sinclair-affiliated companies that have a website each operates and embedded the Video.

137.    Pursuant to Fed. R. Civ. P. 23(a)(2), there are questions of law or fact common to the Defendant class members. The class members electronically embedded the Video and published it without a license.  Plaintiff Nicklen's claims arise from infringements pursuant to the Copyright Act and may be applied against all Defendants in one lawsuit. Plaintiff Nicklen's claims arise from a common federal statute legal theory and a common nucleus of operative facts relevant to each Defendant class member. This liability question may be decided by one Court. Moreover, Defendants may assert a common defense, such as fair use, which may be decided by this Court in one lawsuit.  Common issues of law or fact for the Defendant class, include, but are not limited to:

  a. Whether Defendants embedded the Video from Nicklen's Facebook or Instagram account causing it to be displayed to the public without a license or permission to do so;

  b. Whether the Defendants violated the Copyright Act by infringing any of Plaintiff Nicklen's exclusive rights in his copyrighted Video;

  c. Whether Defendants knew or acted in reckless disregard of the high probability that its actions infringed any of Plaintiff Nicklen's exclusive rights in his copyrighted Video given that notice of licensing requirements was clearly displayed besides the Video in the caption;

  d. Whether actual or statutory damages apply for all violations of the Copyright Act;

  e. Whether a common defense such as fair use applies to Defendants' posts;

138.    Pursuant to Fed. R. Civ. P. 23(a), the defenses, which are anticipated to be raised and interposed by the proposed representative of the Sinclair Class, Defendant WCWN Licensee, LLC, is an independently operated website affiliated named herein affiliated and/or partially or fully owned by Sinclair Broadcast Group, Inc., with WCWN Licensee, LLC's infringing conduct typical for the rest of the Defendant Sinclair-affiliated class members. There is a common liability question to be decided regarding Defendants' wrongful conduct and violation of the Copyright Act, which is applicable and typical for all Defendant class members.

139.    Pursuant to Fed. R. Civ. P. 23(a)(4), the representative Defendants in this lawsuit will fairly and adequately represent and protect the interests of the other members of the Defendant class. The named Defendants are large media conglomerates with well-known counsel who are intimately familiar with Federal Copyright law and class action lawsuits. These law firms, which represent the named Defendants, have extensive experience representing parties in Federal Copyright Law, complex litigation and class actions, have knowledge and experience of the liability claims, defenses to be raised and procedural nature of Rule 23, as a procedural mechanism to decide a common federal liability question in one lawsuit with common defenses.

140.    A class action may be maintained in this lawsuit because Rule 23(a) is satisfied and 23(b):

> (1) prosecuting separation actions against individual class member Defendants would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or,
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

See Fed. R. Civ. P. 23(b).

141.    This class may also be maintained for damages, which involve federal statutory damages with questions of law or fact, which predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Statutory damages have already occurred and continue, and the litigation of this issue may be managed and accomplished in one collective action, including, where necessary, any bifurcation on any damage issue, which should be limited because federal Copyright law for damages applies and there are not individual varying state damage law calculations and differences. Therefore, litigation of these issues is superior and may be managed cohesively in one lawsuit.

142.    This litigation in New York as an established forum familiar with copyright law and media interests and manageability of this type of lawsuit in one lawsuit in controlling the prosecution or defense supports collective action because rulings on federal law would be applicable to not only named class representative Defendants, but also other Defendants.

143.    Substantial commonality exists with federal Copyright liability and federal Copyright defenses.

144.    Plaintiff Nicklen is willing to work and cooperate on any notice requirements required by the Court to notify Defendant entities of this Copyright lawsuit and that rulings herein may affect their rights.

145.    Plaintiff Nicklen believes counsel for the proposed class representative defendants for the Sinclair Class are adequate and very knowledgeable on defending this lawsuit in a collective proceeding. However, the Court may also, in its discretion, nominate interim Defense counsel under Rule 23(g).

146.     Pursuant to Fed. R. Civ. P. 23(b)(3), the common questions of law and fact predominate over any questions, which may affect individual members of the Defendant Class (a general one or one specific to Sinclair Class). Maintaining this lawsuit as a collective action before one Court is a superior means of litigating this lawsuit, rather than hundreds of courts around the country deciding common operative facts against the same Federal Copyright Act violations, and interposed common defenses applicable to all Defendants, in the proposed Defendant Class. The risk of inconsistent litigation with possibly thousands of lawsuits over the same operative facts and Federal Copyright law and interposed common defenses could result in inconsistent adjudication and standards across the country and would also pose a large burden on the court system throughout the country.

147.     This lawsuit, as it arises from a common operative nucleus of facts, and Federal Copyright Law can be effectively managed by this Court, which will conserve judicial resources, preserve the rights of the parties and other members of the Defendant class, and avoid inconsistent and varying determinations of liability and defenses on Federal Copyright Law, which could create incompatible and inconsistent legal decisions and guidance for the parties in this lawsuit and future lawsuits.

148.     One Court can decide the primary legal issues and defenses. Any remaining issue may be decided in bifurcation, if necessary, but the main legal liability is federal statutory law and federal statutory damages, therefore, one lawsuit is a superior means of adjudicating the common operative facts and law.

149.     Plaintiff Nicklen respectfully requests that the Court exercise its, under its authority pursuant to Fed. R. Civ. P. 57 and the Federal Declaratory Judgment Act, 29 U.S.C. § 2201, which provides that any court of the United States, upon the filing of an appropriate

pleading, may declare the rights and other legal relations of any interested party seeking such

declaration. Any such declaration shall have the force and effect of a final judgment or decree.

Plaintiffs respectfully request the Court declare the rights of the parties under Federal Copyright

Act and law, Defendants cease and desist from publishing the Video without a license from

Plaintiff Nicklen, and for statutory damages available under the Federal Copyright Act, or

compensatory damages, available pursuant to the Federal Copyright Act.

### VI. GENERAL FACTUAL ALLEGATIONS

150.    In July of 2017, Plaintiff Nicklen and Plaintiff Mittermeier and a small crew

affiliated with SeaLegacy, the conservationist media production organization founded by the

Plaintiffs, set out for the Canadian Arctic on a photography and filmmaking expedition. Costing

as much as tens of thousands of dollars each to conduct, these expeditions are used to capture

audiovisual content for the purpose of creating compelling conservation-oriented documentary

films and still images which Plaintiffs then license for a variety of purposes as one of their means

for making a living.  On this expedition, the crew trekked to Somerset Island, adjacent to the

much larger Baffin Island, in the mostly rural Canadian territory of Nunavut where they were

surprised to encounter one of the region's famed polar bears rummaging through garbage cans of

a local village in a desperate attempt to find food. The Plaintiffs filmed and photographed the

emaciated bear believing it to be an accurate representation of the fate that awaited the world's

polar bear population given the toll that global warming is taking on their natural habitat.

151.    On or about December 5, 2017, Plaintiff Nicklen posted a brief edit of the footage

he had captured of the starving polar bear the past July to his public Instagram account (user

"paulnicklen," located at:  https://www.instagram.com/p/BcU-6PsAoIp/)[4] with following caption

after the post's byline:

> My entire @Sea_Legacy team was pushing through their tears and emotions while documenting this dying polar bear. It's a soul-crushing scene that still haunts me, but I know we need to share both the beautiful and the heartbreaking if we are going to break down the walls of apathy. This is what starvation looks like. The muscles atrophy. No energy. It's a slow, painful death. When scientists say polar bears will be extinct in the next 100 years, I think of the global population of 25,000 bears dying in this manner. There is no band aid solution. There was no saving this individual bear. People think that we can put platforms in the ocean or we can feed the odd starving bear. The simple truth is this—if the Earth continues to warm, we will lose bears and entire polar ecosystems. This large male bear was not old, and he certainly died within hours or days of this moment. But there are solutions. We must reduce our carbon footprint, eat the right food, stop cutting down our forests, and begin putting the Earth—our home—first. Please join us at @sea_legacy as we search for and implement solutions for the oceans and the animals that rely on them—including us humans. Thank you your support in keeping my @sea_legacy team in the field. With @CristinaMittermeier #turningthetide with @Sea_Legacy #bethechange #nature #naturelovers
>
> **This video is exclusively managed by Caters News. To license or use in a commercial player please contact info@catersnews.com or call +44 121 616 1100 / +1 646 380 1615" (emphasis added)**



---

[4] Nicklen also posted the same Video on this Facebook account with the same text. See
https://www.facebook.com/paulnicklen/videos/10155204590778364/

152.    The text that accompanied the Video on Instagram and Facebook clearly put the world and Defendants on notice that the Video was available for licensing as he was offering to license it.  In fact, Plaintiff Nicklen believes he licensed his Video to almost two dozen entities both in the United States and throughout the world, which is clear evidence that there was a market value for the Video and those media organizations recognized that licensed the Video that was also posted on Instagram or Facebook simply could not be embed the Video into their publication or that the display and/or the use was a "close call" in terms of "fair use." Using "fair use" as a catch-all defense for publishers that needed a justification is usually analyzed after the fact, to avoid seeking and paying a licensing fee when they are caught infringing. While not ideal and not generally consistent with reasonable and acceptable industry practices for reputable news organizations, Nicklen did license the Video after it was published to International Business Times ($6,000 licensing fee) and TEN Media Publishing LLC/A360 Inc. ($6,500) as examples of the top end of the fair market value of licenses.

153.    On December 5, 2017, Plaintiff Mittermeier posted her Photo on her public Instagram account at https://www.instagram.com/p/BcU_8c8FDA8/ as follows:



154.    Like Nicklen, Mittermeier also licensed her Photo to entities who all presumably recognized that the use of the Photo for publication required a license and could not be considered fair use.

## A.  COMMON ALLEGATIONS OF EVIDENCE OF THE INFRINGEMENTS

155.    Starting on or about December 8, 2017 through on or around December 13, 2017, Defendants began embedding and/or displaying Plaintiff Nicklen's Video and, in one instance as alleged below, Plaintiff Mittermeier's Photo. The embeds were made using either Instagram or Facebook as noted, which have substantially similar terms related to copyright and embedding policies. The wrongful acts and the facts surrounding such conduct are generally common to each Plaintiff and each Defendant. The subject matter is of the same polar bear video footage and still image on the day in 2017 and Plaintiff Nicklen posted his copyrighted work to Instagram and Facebook on the same day and distributed for a license to *NatGeo* on December 7, 2017.

45

156.    Certain Defendants have already indicated their intent to assert a fair use defense, which is neither supported by the facts nor the law. The use of the Video by Defendants is not transformed by or through commentary or criticism sufficient for fair use purposes; at best, these uses merely note the "viral" nature of the Video as a preface to describing its contents and regurgitating Plaintiff Nicklen's caption to the Video on his Instagram and Facebook posts, the text of a December 7, 2017 article about the video published by licensee, National Geographic,[5] or a December 8, 2017 article about the video published by licensee, CBC, Radio Canada.[6] Moreover, in all the posts by Defendants where the Video was used, each displayed or caused to be displayed the entire one-minute Video, far more than is reasonably required or necessary to comment or criticize the subject matter of the Video or Video itself. The use of the entire Video here is analogous to a writer that embeds an entire Hollywood blockbuster into his critique of the film, then asserts "fair use" as a defense to justify the display. The use of the entire film in such a critique is no more justified than Defendants' display of the entire Video here. Additionally, because Plaintiff regularly licenses his videos as a part of his means to make a living, and did so with the Video, the Defendants' unauthorized, non-transformative display of the Video on their commercial websites was a bad faith usurpation of the market for Plaintiffs' to license Video. Thus, any fair use defense will fail on its face.

157.    Plaintiffs join in this same complaint against the various individual Defendants as the most efficient means to adjudicate the disputes by all parties involved because the liability alleged generally is caused by the same Video and Photo of the polar bear, with the infringements all occurring within a few days using substantially similar means to display the

---

[5] See: https://www.nationalgeographic.com/news/2017/12/polar-bear-starving-arctic-sea-ice-melt-climate-change-spd/
[6] https://www.cbc.ca/radio/asithappens/as-it-happens-friday-edition-1.4439608/all-of-our-team-was-in-tears-video-shows-polar-bear-starving-in-the-north-1.4439616

Video and Photos. Further, the transaction, occurrence, or series of transactions or occurrences (the infringements are all separate) are similar, warranting the court to administer this case under one consolidated action, with each Defendant being subject to the jurisdiction of this court, otherwise, inconsistent results could occur.

158.    Each Defendant caused the Video owned by Nicklen or the Photo owned by Mittermeier to be displayed on the respective Defendants' website via the Instagram or Facebook API embed tool, described below, without securing a valid license or permission from each Plaintiff, or a valid legal defense such as fair use. This is also despite Plaintiff Nicklen making it clear in the Instagram and Facebook post that his Video was available for licensing through Caters News Agency.

159.    Prior to the embedding and displaying of the Video and Photos by Defendants on their respective web sites, as is described in more detail below, Plaintiff Nicklen's Video and Mittermeier's Photo were first posted and displayed on their respective public Instagram and Facebook accounts on or about December 5, 2017. Each Plaintiff maintains the sole copyright interest in their works and each Plaintiff timely registered the works with the US Copyright office.

160.    All Defendants, except where noted, accomplished its unauthorized display of Nicklen's Video or Mittermeier's Photo by inserting the unique computer code attached to Video or Photo on each of Plaintiff's respective Instagram or Facebook accounts, generally referred to as Instagram or Facebook's application programming interface ("API") code, in the Defendants' respective websites causing the Video or Photo to simultaneously be displayed within the body of the Defendants' web site without the need for a viewer of Defendants' web site to take additional action or navigate their web browser away from the web site to the Instagram account

of Nicklen or Mittermeier. In other words, a viewer of the article on the web site likely did not even know that the Video or Photo displayed in the body of the web site was "embedded" and the actual Video or Photo file was stored on Instagram's server.[7]

161.   To a viewer of the Post, content embedded from an Instagram account appears no differently than other content within the Post, be it an advertisement, clickable link, or Defendant's original and/or owned or licensed content. A viewer does not need to be an Instagram user or have an Instagram account (or Facebook account) to view Instagram photos and videos or Facebook videos embedded within any of Defendants' posts, including those at issue.

162.   All Instagram and Facebook user account holders, including Plaintiffs, allegedly agree to Instagram and Facebook's Terms of Use in order to initially open an account and maintain that account for use on the Instagram or Facebook platform. Pursuant to Instagram and Facebook's Terms of Use, Instagram and Facebook users, such as Plaintiffs, retain ownership of their copyrighted photos and videos that are posted to their Instagram accounts. However, each user agrees to grant Instagram or Facebook as the case may be, a nonexclusive license to the content the user posts to their Instagram or Facebook account, including any copyrighted photos or videos, which, in turn, provides Instagram or Facebook permission to license, or sublicense, those copyrighted photos should Instagram elect to do so.[8] There is no evidence that Instagram or Facebook granted any Defendant in this case a license to the Video or Photo. In fact, Facebook's lawyers, represented in court that Facebook has never given out a license to a publisher who uses the API embed tool as noted above. Therefore, Instagram and Facebook's terms (which are

---

[7] Upon information and belief, Instagram's default format for images is JPEG (.jpg), meaning that any image that is uploaded in PNG (.png), BITMAP (.bmp) or MP4 of MOV files.
[8] See Instagram Terms of Use.

identical) make it clear that publishers still need to obtain a license or permission, as required by law.

163.    Further, users, such as each Defendant that used Instagram and Facebook's API embedding code, agrees to be bound by an additional set of rules contained within Instagram's Platform Policy ("Platform Policy").[9] Notably, the Platform Policy contains no language (that can be reasonably interpreted or misconstrued) that provides API users such as each Defendant here a license or sub-license to freely use, display, publish, or embed the photos of users such as Plaintiffs without first ensuring that each Defendant received "all rights necessary to display the content of general Instagram users."[10]

164.    Non-party Facebook Inc., who owns and controls its subsidiary, Instagram, LLC, publicly confirmed that Instagram's Platform Policy does not automatically give API embed users a license or sub-license to use and display the content of Instagram's general user population:

> *"***While our terms allow us to grant a sub-license, we do not grant one for our embeds API. Our platform policies require third parties [such as Defendants] to have the necessary rights from applicable rights holders. This includes ensuring they have a license to share this content, if a license is required by law.***"*[11]

165.    No Defendant will be able to provide proof of having obtained a license for the Video or Photo.

166.    Instead, Defendants stole Nicklen's Video and/or Mittermeier's Photo by using the Instagram or Facebook API tool to "embed" each in certain posts on Defendants' respective websites.  This is despite Facebook's public position regarding licensing and the use of the API

---

[9] See Instagram Platform Policy.
[10] See Instagram Platform Policy at D-9.
[11] Timothy B. Lee, *Instagram just threw users of its embedding service under the bus*, Ars Technica, June 4, 2020. Available at: https://arstechnica.com/tech-policy/2020/06/instagram-just-threw-users-of-its-embedding-api-under-the-bus/.

embed tool, and at least two court rulings in the Southern District of New York in *McGucken v. Newsweek LLC et. al.*, No. 1:2019cv09617 - Doc. 35 (S.D.N.Y. June 1, 2020) and *Sinclair v. Mashable Inc.* No.: 1:18-cv-00790 (S.D.N.Y.). Certain Defendants that received a takedown notice in early 2018 when Plaintiffs discovered some infringements and most generally took down the alleged infringements of the Video and Photo unless otherwise noted.

167.    However, Plaintiffs discovered additional infringers in November and December 2020 and sent takedown notices to some identifiable and ascertainable infringing Defendants. However, Plaintiffs have recently evaluated the litigation, recent developments, and believe that due to the large number of additional infringers on the same occurrence and set of facts, that a Defendant class, as alternative to joinder of only Sinclair affiliates, is the more appropriate procedural mechanism and appropriate vehicle to drive this common factual and legal dispute and manage this legal matter for the benefit of all parties and the court system. Plaintiff Nicklen believes this amendment is appropriate to adjudicate the common questions of law and fact across the spectrum of similarly situated Defendant media Defendants given that there were likely hundreds or more of infringers such as Sinclair affiliates, infringing on the same operative nucleus of facts under the same federal law. In any event, the Defendants that did not takedown the Video and Photo were on actual or constructive notice of Facebook's position about the API/no automatic license, the two S.D.N.Y. court decisions, and willfully or recklessly ignored this information, even though each Defendant would likely be considered sophisticated corporate digital publishing companies with lawyers or management to address licensing and photo/video rights clearing for any such uses.

///

///

B.  **SPECIFIC INFRINGEMENTS ALLEGED BY PLAINTIFF NICKLEN**

168.    None of the following Defendants secured a license or permission from Plaintiff Nicklen to display, copy, reproduce or use his copyrighted Video in their respective website posts.

169.    Plaintiff Nicklen's Video is filed as Exhibit "4" (under separate cover) and the U.S. Copyright Office's registration for his video is attached as Exhibit "4A" and bears an Effective Date of February 7, 2018 and Registration number PA 2-102-139.

170.    Defendant Sinclair Broadcast Group, Inc. ("Sinclair") owns affiliate entity WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) and owns as many 294 television stations in the United States that each operate independent websites. Plaintiff sent Defendant Sinclair's registered agent for DMCA notices (the same agent for all Sinclair affiliates), a DMCA-compliant takedown demand on December 9, 2020 noticing the unauthorized display of the Video on each of its independently operated web sites. However, no Sinclair affiliate (likely well over 100) have yet to comply with the takedown notice and Plaintiff's Video remains displayed on over 100 web sites that Plaintiff has discovered as of the date of this filing. Sinclair Broadcast Group, Inc. may not be directly liable for infringement as it did not publish, copy or display the Video, its 100-plus affiliates did and are independently liable for each infringement of the Video and not jointly and severally liable as only one infringement.

171.    Defendant WCWN Licensee, LLC (d/b/a WCWN; d/b/a CW15 Albany) embedded Nicklen's Video from his Facebook account (the Nicklen Instagram post is identical to the Nicklen Facebook post having the same video and the same caption text) in a post titled, "Starving Polar Bear Goes Viral in Heartbreaking Video," published on December 11, 2017 (available at: http://cwalbany.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-

video).  This WCWN post is attached as Exhibit 5.  As a Defendant that is similarly situated to all the Sinclair affiliates, WCWN (CW 15), published the post that essentially does a cut and paste job (some might even refer to this as plagiarism) from the *Nat Geo* article. Exhibit 5 shows in yellow highlights the text that the post plagiarized from the *Nat Geo* article, which is attached as Exhibit 6, and shows in yellow highlights the source text used in the post. To make matters worse for each Sinclair affiliate, Exhibit 5 also shows in blue highlights the text that the Sinclair post plagiarized from Nicklen's Facebook Post, which is attached as Exhibit 7, and shows in blue highlights the source text used in the post. The post was essentially a "cut and paste" job used by each affiliate of Sinclair. The nature of the post displayed the entire Video and a near complete crib job of the *Nat Geo* article and Nicklen's Facebook text, defeating any "fair use" defense each Sinclair affiliate may raise.  Sinclair and its affiliates have a history of using its television stations (all independently operated under separate companies) to parrot the same material, even though each station has a website that is operated through a separate corporate entity.[12] See attached Exhibit 2 for a list of all known Sinclair corporate entities filed with the SEC in 2017 that are similarly situated defendants (for a Defendant class). WCWN published the same post on their web sites with the Video without a license or a valid defense.

172.    Sinclair Broadcast Group, Inc. owns the following independent, affiliated entities that are all liable for separate acts of infringements of the Video.

173.    While Sinclair Broadcast Group, Inc. likely did not cause the Video to be displayed via embed (as its websites are make clear in the terms of use), each of Sinclair's independent and separate TV stations all have independently operated websites controlled and operated by the affiliates who either members of the Sinclair Class or alternatively named herein

---

[12] https://www.nytimes.com/2018/04/02/business/media/sinclair-news-anchors-script.html

using joinder. Sinclair Broadcast Group Inc. is likely not jointly and severally liable for each of its affiliates, as each individual affiliate has its own liability for publishing the Video and is independently liable for its own infringing acts. Each Sinclair-affiliated entity named in this case is a distinct affiliate company as named parties or under a Sinclair Class in order for Plaintiff Nicklen to hold each affiliate liable. Each Sinclair Affiliate entity operates a distinct TV station and a distinct website for each TV station. Each Sinclair Affiliate holds itself out as a distinct entity for legal matters related to its website's operations, the services provided by the website and content on what is published to each site. Each Sinclair Affiliate publishes content from the local management team for each station and has operational control over the site. The infringing acts described in this second amended complaint are each website's illicit display of Plaintiff's copyrighted Video. Each infringing act only occurred once a web page displaying the video was published to a particular Sinclair Affiliates' station's website; therefore, each Sinclair Affiliate is a separate infringer and are not are not jointly and severally liable with each other for their infringing display of Nicklen's video. Sinclair Broadcast Group makes it clear that it is not responsible for any Sinclair Affiliate's operations on any website. Therefore, separate awards of statutory damages are appropriate as to each infringing Sinclair Affiliate.

174.    Within the language of the terms of use that govern all independent Sinclair Affiliate websites, Sinclair makes it clear that it is limiting all liability of the Sinclair (as a parent company) and shifting it on each legally distinct Sinclair Affiliate that operates the website. Sinclair Broadcast Group (or some other entity) may own each web site, but Sinclair has gone out of its way to insulate the Sinclair parent from any liability of the affiliate and shift all liability onto its affiliates.    See https://sbgi.net/terms-conditions/. The pertinent language reads:

> Thank you for visiting this website [this language is for all 151 or 163 LLC stations that have web sites), which is operated by an Affiliate of Sinclair Broadcast Group, Inc.

("Sinclair"). This site is one of a network of ad-supported sites operated by Affiliates of Sinclair each of which also operates a local television station (each a "Sinclair Affiliate Site" and, collectively, the "Sinclair Network of Sites"). [...] These Website terms and Conditions (sometimes called "Agreement") are a binding legal contract between you and the Sinclair Affiliate that operates this website ("we," "us" or "our") and governs your use of such website and any content made available from or through such website, including any subdomains thereof. [...] Notwithstanding anything to the contrary in this visitor agreement, we will not be liable for the content of or any services provided by any Sinclair Affiliate Sites other than this Site or for the content of any site (or application or mobile application) operated by or any services provided by any Service Provider. [In other words, each affiliate is not liable for the acts of the other affiliates]

[...]

Informal Dispute Resolution: You and the Sinclair Affiliate that operates the Service agree to try to resolve disputes informally before resorting to arbitration.

[...]

Arbitration Procedures: You and the Sinclair Affiliate that operates the Service agree that this Agreement affects interstate commerce and that the Federal Arbitration Act applies.

175.    The general rule is that a parent such as Sinclair Broad Group is a "separate and distinct entity" in copyright infringement cases. *See, e.g.*, *Sinclair v. Ziff Davis, LLC and Mashable, Inc.*, 454 F.Supp.3d 342, 347 (S.D.N.Y. 2020) (holding that Mashable is a separate entity from Ziff Davis, "corporations and their subsidiaries are legally distinct ….")

176.    A parent company like Sinclair Broadcast cannot "reverse" pierce its corporate veil for its affiliate subsidiaries to avoid liability for those affiliates. *Big East Entertainment, Inc. v. Zomba Enterprises, Inc.,* 453 F.Supp.2d 788 (S.D. N.Y.). A parent corporation may not pierce the corporate veil for its own benefit in order to advance the claims of its subsidiary. This is akin to maintaining that Sinclair's affiliates just shells (perpetuating a fraud) on creditors and others who rely on the separate and distinct nature of the companies. So, Sinclair Broadcast Group cannot "pierce" its own corporate veil to advance defenses of affiliates as this would mean that there is no separation between all of its affiliated companies, i.e., it is a sham corporate structure

for purposes of avoiding copyright liability but for purposes of FCC licenses and other statutory schemes such as antitrust, Sinclair purports to rely on having separate, distinct operating affiliates.

177.    Plaintiff Nicklen is not seeking a single damages award against Sinclair Broadcast Group for Sinclair Broadcast Group's liability, he is seeking to hold the numerous affiliates (perhaps as many as 151) liable for 151 infringements of a single work, the Video. The Sinclair Class is about the independent liability of each Sinclair affiliate for distinct infringing display of Plaintiff Nicklen's copyrighted Video.

178.    Finally, Sinclair's affiliates have not taken down the Video from any of the Sinclair Affiliates despite DMCA takedown notices sent to the DMCA agent for each web site. The DMCA takedown notices were sent over 60 days ago, on or about December 8, 2020 and again on December 13, 2020.

179.    Defendants KDSM, LLC and/or KDSM Licensee, LLC displayed the Video via embedding it from Plaintiff's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See

https://kdsm17.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video.

180.    Defendants Chesapeake Media I, LLC and/or KRNV, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See https://mynews4.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video.

181.    Defendants KRXI, LLC and KRXI LICENSEE, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See https://mynews4.com/news/offbeat/starving-polar-bear-

goes-viral-in-heartbreaking-video and https://foxreno.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

182.    Defendant KVCW, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See http://cwlasvegas.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video.

183.    Defendant KVMY, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See http://mylvtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

184.    Defendants KATV, LLC and/or KATV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See https://katv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

185.    Defendants KTUL, LLC and/or KTUL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See  https://ktul.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video.

186.    Defendant WLUK Licensee LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See  https://fox11online.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

187.    Defendant WJAR Licensee LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement. See https://turnto10.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

188.   Defendant WCWF Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. See http://cw14online.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

189.   Defendant WBMA Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  ttps://abc3340.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

190.   Defendant WSET Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  - https://wset.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

191.   Defendant WVTV Licensee, Inc. displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://cw18milwaukee.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

192.   Defendant Raleigh (WRDC-TV) Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://myrdctv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

193.    Defendant Birmingham (WABM-TV) Licensee, Inc. displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://wabm68.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

194.    Defendant WICS Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://newschannel20.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

195.    Defendants KOKH LLC and/or KOKH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://okcfox.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

196.    Defendants Milwaukee Television LLC and/or WCGV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.

http://my24milwaukee.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

197.    Defendants Sinclair Media III, Inc. and/or WCHS Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://wchstv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

198.    Defendants WVAH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement. https://wvah.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

199.    Defendants Sinclair Properties, LLC and/or WDKA Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://mywdka.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

200.     Defendant WMMP Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://mytvcharleston.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

201.    Defendants Sinclair Television of El Paso, LLC and/or KDBC Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.

https://cbs4local.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

202.    Defendants WGME, INC. and/or WGME Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://wgme.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

203.    Defendants WSMH, Inc and/or WSMH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under WEYI.

https://nbc25news.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

204.    Defendant WUCW Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://thecwtc.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

205.    Defendant KABB Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://foxsanantonio.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

206.    Defendant KDNL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://abcstlouis.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

207.    Defendant KEYE Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://cbsaustin.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

208.    Defendant KFDM Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://kfdm.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

209.    Defendant KFOX Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement. https://kfoxtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

210.    Defendant KGAN Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://cbs2iowa.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

211.    Defendant KHGI Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://nebraska.tv/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

212.    Defendant KHQA Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://khqa.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

213.    Defendant KOCB Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://cwokc.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

214.    Defendant KPTH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It may also operate under KMEG.

https://siouxlandnews.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

215.    Defendant KRCG Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://krcgtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

216.    Defendant KSAS Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. http://foxkansas.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

217.    Defendant KTVL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://ktvl.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

218.    Defendant KTVO Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://ktvo.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

219.    Defendant KUTV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://kutv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

220.    Defendant KVII Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement.  https://abc7amarillo.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

221.    Defendant WACH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wach.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

222.    Defendant WEAR Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. -  https://weartv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

223.    Defendant WFGX Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. -  http://wfgxtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

224.    Defendant WFXL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wfxl.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

225.    Defendant WGFL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://mycbs4.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

226.     Defendant WGXA Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wgxa.tv/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

227.     Defendant WKRC Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://local12.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

228.     Defendant WLFL Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://raleighcw.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

229.     Defendant WLOS Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wlos.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

230.     Defendant WMSN Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://fox47.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

231.     Defendant WNAB Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://cw58.tv/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

232.    Defendant WNWO Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://nbc24.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

233.    Defendant WOAI Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://news4sanantonio.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

234.    Defendant WOLF Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://fox56.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

235.    Defendant WPBN Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://upnorthlive.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

236.    Defendant WPDE Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://wpde.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

237.    Defendant WPEC Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement.  https://cbs12.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

238.    Defendant WPGH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://wpgh53.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

239.    Defendant WRGB Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://cbs6albany.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

240.    Defendant WRLH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://foxrichmond.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

241.    Defendant WSYX Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://abc6onyourside.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

242.    Defendant WTGS Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://fox28media.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

243.    Defendant WTOV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wtov9.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

244.    Defendant WTTO Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://wtto21.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

245.    Defendant WTVC Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://newschannel9.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

246.    Defendant WVTX Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://cw34.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

247.    Defendant WTVZ Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://mytvz.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

248.    Defendant WUHF Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright

infringement.  https://foxrochester.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

249.    Defendant WUTV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://wutv29.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

250.    Defendant WUXP Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://mytv30web.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

251.    Defendant WWHO Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  http://cwcolumbus.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

252.    Defendant WWMT Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wwmt.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

253.     Defendant WXLV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://abc45.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

254.     Defendant WZTV Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://fox17.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

255.     Defendant Sinclair Television of Abilene, LLC (Texas LLC) displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KTXS.

https://ktxs.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

256.     Defendant Sinclair Television of Bristol, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under WCYB.

https://wcyb.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

257.     Defendant Sinclair Television of Montana, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KECI.

https://nbcmontana.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

258.     Defendant WCTI Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  https://wcti12.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

259.     Defendants Sinclair Television of Fresno LLC and/or KMPH Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid

legal defense, which constitutes copyright infringement.

https://kmph.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

260.    Defendant WJAC Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. https://wjactv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

261.    Defendants Sinclair Television of Omaha, LLC and/or KPTM Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.

https://fox42kptm.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

262.    Defendant Sinclair Television of Bakersfield, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KBAK.

https://bakersfieldnow.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

263.    Defendant Sinclair Television of Portland, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It may also operate under KATU.

https://katu.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

264.    Defendants Sinclair Television of Washington, Inc. and Sinclair Kennewick Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It may operate under KEPR. https://keprtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

265.     Defendant Sinclair Seattle Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KOMO.

https://komonews.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

266.     Defendant Sinclair Boise Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement.  It also may operate under KYUU.

https://cwtreasurevalley.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

267.     Defendant Sinclair Yakima Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KIMA.

https://kimatv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

268.     Defendant Sinclair Lewiston Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KLEW.

https://klewtv.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

269.     Defendant Sinclair Eugene Licensee, LLC displayed the Video from Nicklen's Facebook account, without a license or permission or valid legal defense, which constitutes copyright infringement. It also may operate under KVAL.

https://kval.com/news/offbeat/starving-polar-bear-goes-viral-in-heartbreaking-video

270.     Upon information and belief there are numerous additional Sinclair affiliates that fall under the Sinclair Class definition that displayed the Video from Nicklen's Facebook account without a license or permission or valid legal defense, which constitutes copyright

infringement.  However, each affiliate deleted, archived and/or took down the display of the

Video and post without Plaintiff capturing and preserving evidence of the infringement.

Discovery will show which of those affiliates engaged in the wrongful conduct. Several of those

affiliates include Defendants KAME, LLC, WICD Licensee, LLC, KFXA Licensee LLC, KUPN

Licensee LLC, KUQI Licensee, LLC, WSTQ Licensee, LLC, WUPN Licensee, LLC, Sinclair

Television of California, LLC, Sinclair Television of Seattle, Inc., Sinclair Television of Oregon,

LLC, Sinclair Television of Washington Inc., and Sinclair La Grande Licensee, LLC.

271.    Defendant T&R Productions, LLC (d/b/a RT Network[13]) embedded Plaintiff

Nicklen's Video from his Instagram account in a post titled, "'Soul-crushing': Filmmaker

captures 'slow, painful death' of starving polar bear (VIDEO)," published on December 9, 2017

(available at: https://www.rt.com/news/412569-polar-bear-canada-dying/).  The nature of RT's

display of the Video does not warrant a "fair use" defense.

272.    Defendant Hearst Properties, Inc. (d/b/a KCCI, WESH, WLKY, WMTW,

WMUR, WPBF, WXII) embedded Plaintiff Nicklen's Video from his Instagram account in a

post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around

December 9, 2017 (available at: http://www.kcci.com/article/photographers-soul-crushing-video

-of-starving-polar-bear-goes-viral/14398212; http://www.wesh.com/article/photographers-soul

-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wlky.com/article/photo

graphers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wmtw.

com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http

://www.wmur.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-

---

[13] Sometime in 2017, during the period of infringement, Defendant RT registered with the U.S. Department of State as a foreign agent (Russia) at the Department's insistence. (See: https://www.justice.gov/opa/pr/production-company-registers-under-foreign-agent-registration -act-agent-russian-government.)

viral/14398212; http://www.wpbf.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.wxii12.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KCCI, WESH, WLKY, WMTW, WMUR, WPBF, and WXII's display of the Video does not warrant a "fair use" defense. Similar to the Sinclair affiliates allegations above, this defendant entity is independently liable for its own separate act of infringement of the Video.

273.   Defendant Hearst Stations Inc. (d/b/a, KMBC, KSBW) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.kmbc.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.ksbw.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KMBC and KSBW's display of the Video does not warrant a "fair use" defense.  Similar to the Sinclair affiliates allegations above, this defendant entity is independently liable for its own separate act of infringement of the Video.

274.   Defendant Hearst Television, Inc. (d/b/a KCRA, KOCO, WAPT, WBAL, WVTM) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.kcra.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.koco.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wapt.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; http://www.wbaltv.com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212; and http://www.wvtm13.com/article/photographers-soul-

crushing-video-of-starving-polar-bear-goes-viral/14398212).  The nature of KCRA, KOCO, WAPT, WBAL, and WVTM's display of the Video does not warrant a "fair use" defense. Similar to the Sinclair affiliates allegations above, this defendant entity is independently liable for its own separate act of infringement of the Video.

275.    WJCL HEARST TELEVISION LLC (d/b/a WJCL) embedded Plaintiff Nicklen's Video from his Instagram account in a post titled, "Photographer's 'soul crushing' video of starving polar bear goes viral," on or around December 9, 2017 (available at: http://www.wjcl. com/article/photographers-soul-crushing-video-of-starving-polar-bear-goes-viral/14398212). The nature of WJCL's display of the Video does not warrant a "fair use" defense. Similar to the Sinclair affiliates allegations above, this defendant entity is independently liable for its own separate act of infringement of the Video.

276.    Upon information and belief, all other defendants, such as those owned by Defendant Hearst Communications, Inc.(which may own and control about 34 stations) through various operating entities and other defendants that are similarly situated, infringed upon Plaintiff Nicklen's Video without a license or a fair use defense, copying language from the National Geographic article and/or Nicklen's Instagram or Facebook post with almost no additional original copy that could be considered transformative sufficient to sustain a claim of fair use.  Similar to the Sinclair affiliates allegations above, this defendant entity is independently liable for its own separate act of infringement of the Video.

C. **INFRINGEMENT ALLEGED BY PLAINTIFF CRISTINA MITTERMEIER**

277.    Plaintiff Mittermeier's Photo is filed as Exhibit "8" and the U.S. Copyright Office's copyright registration listing for this photo is attached as Exhibit "8A" and bears an Effective Date of February 8, 2018 and Registration number VA 2-087-796.

278.   Defendant Planck, LLC (d/b/a Patch Media) embedded Plaintiff Mittermeier's Photograph from her Instagram account in a post titled, "Starving Polar Bear Video Warns Of Impending Extinction," published on December 13, 2017 (available at: https://patch.com/us/across-america/starving-polar-bear-video-warns-impending-extinction).   Sometime after Plaintiff's DMCA-compliant takedown notice of March 22, 2018, the infringing display was removed from the post, but Defendant Planck, LLC has refused provide just compensation to Plaintiff Mittermeier for the Patch's unauthorized use.   The nature of Patch Media's display of the Video does not warrant a "fair use" defense.

## VII. CAUSES OF ACTION

## COUNT 1: DIRECT INFRINGEMENT OF COPYRIGHTS (17 U.S.C. §§ 106, 501)

### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

279.   Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

280.   Plaintiff Nicklen is and was at all relevant times the sole copyright owner under United States copyright with respect to the copyrighted Video identified in Exhibits 4 and the registration in 4A.

281.   Plaintiff Mittermeier is and was at all relevant times the sole copyright owner under United States copyright with respect to the copyrighted Photo identified in Exhibits 8 and the registration in 8A.

282.   Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce their respective copyrighted works, to distribute the copyrighted works to the public and exclusive display right.

283. Each Defendant, without the permission, license, or consent from Plaintiffs, embedded either Nicklen's single copyrighted Video or Mittermeier's Photo as alleged above onto Defendants' websites using the Instagram or Facebook API, causing Nicklen's Video or Mittermeier's Photo to be displayed on the Defendant's website and distributing and displaying the Video or Photo to the public.

284. Defendants have each violated Plaintiffs' exclusive rights of display (17 U.S.C. § 106(5)), reproduction (17 U.S.C. § 106(1)), and/or distribution (17 U.S.C. § 106(3)) of Nicklen's Video and/or Mittermeier's Photo as alleged above.

285. Defendants never sought permission nor secured a license for the right to embed or display Plaintiffs' copyrighted works despite Plaintiffs each operating publicly available websites for the purpose of inviting offers from potential licensors. Nicklen also provided explicit licensing information in the text of his Instagram post where the Video was first posted. This is all considering numerous entities allegedly securing a license or consent from Plaintiff while others flagrantly violated the Copyright Act.

286. Plaintiffs are also informed and believe that the foregoing acts of infringement have been willful and intentional or reckless, in total disregard of and with indifference to the rights to Plaintiffs' copyrights and exclusive rights under copyright, especially in light of certain Defendant's reputation as serial copyright infringers which creates a presumption of enhanced damages.

287. As a result of Defendants' violation of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendants' infringements of the Copyrighted Video and Photo. Alternatively, Plaintiff may elect to pursue actual damages pursuant to 17 U.S.C. § 504(b) based on what Defendants earned

from the websites via advertising, impressions, user traffic etc., and savings from the avoidance of paying an agreed licensing fee.

288.    Plaintiffs are further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

289.    In the event that Nicklen's Video and Mittermeier's Photo are still published, displayed or associated with Defendants, the conduct of Defendants have caused, may still be causing, and will continue to cause Plaintiffs irreparable injury that cannot fully be compensated or measured in money unless enjoined and restrained by this Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing Plaintiffs' copyrights, and ordering Defendants to destroy all copies of images made or used in violation of Plaintiffs' exclusive rights and to remove the Video and Photo from any website or blog that Defendants control, operate, or own.

## COUNT 2: INDUCEMENT OF COPYRIGHT INFRINGMENT

### (PLAINTIFF NICKLEN AGAINST DEFENDANTS HEARST AND SINCLAIR)

290.    Plaintiff Nicklen incorporates herein by this reference each and every allegation contained in each paragraph above.

291.    Defendants Sinclair and Hearst's affiliates have infringed and are infringing Plaintiff Nicklen's registered copyrighted Video by embedding infringing copies of Plaintiff's Video onto and from Facebook and Instagram's platform and publicly displaying, distributing, and reproducing, or purporting to authorize the display, distribution, or reproduction of his copyrighted Video or all without authorization from Facebook or Plaintiff.

292.    Alternative to direct infringement by each independent entity, Hearst and Sinclair are liable under the Copyright Act for inducing the infringing acts of each affiliated entity.

293.    Defendants, through their various parent corporations Hearst and Sinclair, may exercise control of and/or influence over each affiliate named Defendant and were therefore directly infringing Plaintiff Nicklen's exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

294.    Defendants Hearst and Sinclair are fully aware, or at least should be aware, that Plaintiff Nicklen's Video was copyrighted and authorized for license through his website and Caters.

295.    Defendants Hearst and Sinclair are equally aware, or at least should be aware, that Facebook embed users are employing Facebook to unlawfully reproduce, distribute, publicly perform, and publicly display Plaintiff's Video. Defendants intend for, encourage, and induced each of their independent affiliates to employ Facebook embed tools in this regard to cause the Video to be displayed.

296.    Defendants' Hearst and Sinclair infringements have been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff Nicklen.

297.    As a direct and proximate result of Defendants' infringement of Plaintiff Nicklen's exclusive copyrights, Plaintiff Nicklen is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Plaintiff and pursuant to 17 U.S.C. § 504(b), Plaintiff Nicklen shall be entitled to Defendants' profits from the acts of infringement, to be proven at trial.

298.    Plaintiff Nicklen is entitled to their costs, including reasonable attorneys' fees, pursuant 17 U.S.C. § 505.

299.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff Nicklen great and irreparable injury that cannot fully be compensated.

300.     Pursuant to 17 U.S.C. § 502, Plaintiff Nicklen is entitled to a permanent injunction requiring Defendants to stop displaying the Video unless a valid license is secured.

## COUNT 3: (CONTRIBUTORY COPYRIGHT INFRINGEMENT)

## (PLAINTIFF NICKLEN AGAINST DEFENDANTS HEARST AND SINCLAIR)

301.     Plaintiff Nicklen incorporate herein by this reference each and every allegation contained in each paragraph above.

302.     Defendants Hearst and Sinclair parent companies have infringed and are infringing Plaintiff Nicklen's registered copyrighted Video by, inter alia, embedding infringing copies of Plaintiff's Video onto and from Facebook and Instagram's platform and displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted Video, all without authorization. As Facebook or Instagram embed users, Defendants are therefore directly infringing Plaintiff's Nicklen's exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5)

303.     Alternative to direct infringement, Defendants Hearst and Sinclair parent are liable as contributory copyright infringers for the infringing acts of their various named affiliates and Sinclair Class as the case may be. Defendants enable, induce, facilitate, and materially contribute to each act of infringement by each id their independent affiliates.

304.     Defendants have actual and constructive knowledge that their respective affiliates are employing Facebook or Instagram to copy, distribute, and publicly display Plaintiff Nicklen's copyrighted Video. Acting with actual and constructive knowledge, Defendants each enable, facilitate, and materially contribute to their respective affiliates' copyright infringement, which could not occur without Defendants' enablement.

305.     Defendants' infringements have been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff Nicklen.

306.     As a direct and proximate result of Defendants' infringement of Plaintiff's exclusive copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Plaintiff and pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to Defendants' profits from the acts of infringement, to be proven at trial.

307.     Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant 17 U.S.C. § 505.

308.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated.

309.     Pursuant to 17 U.S.C. § 502, Plaintiffs and the Class are entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiffs' and the Class's copyrights.

## COUNT IV: (VICARIOUS COPYRIGHT INFRINGEMENT)

## (PLAINTIFF NICKLEN AGAINST DEFENDANTS HEARST AND SINCLAIR)

310.     Plaintiff Nicklen incorporates herein by this reference each and every allegation contained in each paragraph above.

311.     Defendants Hearst and Sinclair as well as the Sinclair Class have infringed and are infringing Plaintiff Nicklen's registered copyrighted Video by, inter alia, embedding infringing copies of Plaintiff's Video onto and from Facebook and Instagram's platform and publicly displaying, distributing, and reproducing, or purporting to authorize the public display, distribution, or reproduction of such copyrighted Video, all without authorization. Defendants

and the Class are therefore directly infringing Plaintiff's exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

312.    Alternatively, Defendants and the Class are vicariously liable for the infringing acts of each of their respective affiliates such as the case may be with Hearst and Sinclair.

313.    Defendants Hearst and Sinclair have both the right and the ability to supervise, monitor, track and enforce each of their independent affiliates' infringing conduct and to prevent their respective affiliates from infringing Plaintiff's copyrighted Video.

314.    Hearst and Sinclair may significantly and directly benefits from widespread infringement by its affiliates. Defendants derive substantial advertising revenue tied directly to the volume of traffic they can generate by and through their affiliates.

315.    As a direct and proximate result of Defendants' infringement of Plaintiff Nicklen's exclusive copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Plaintiff pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to Defendants' profits from the acts of infringement, to be proven at trial.

316.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant 17 U.S.C. § 505.

317.    Defendants' conduct is causing and, unless enjoined by this Court, will continue because Plaintiff great and irreparable injury that cannot fully be compensated.

318.    Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to stop displaying his Video or enter into an agreed upon license.

///

///

## VIII. DAMAGES

319.    Defendants' conduct caused actual damages and/or are each liable for statutory damages of up to $30,000.00 for each separate infringement for each Defendant entity that caused an infringement or alternatively up to $150,000.00 for each willful infringement pursuant to 17 U.S.C. § 504.  Alternatively, Plaintiffs may elect to seek actual damages and profits earned by Defendants related to the infringing conduct.

## IX. JURY TRIAL DEMANDED

320.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully demand a trial by jury of all the claims asserted in this Complaint so triable.

## X. RELIEF REQUESTED

321.    WHEREFORE, Plaintiffs respectfully request and pray that the Court enter judgment on their behalf adjudging and decreeing that:

a. For an order certifying this lawsuit as a Defendant class action or Sinclair Class under Rule 23 for all class members that meet the definition or alternatively to only the Sinclair Class; an order appointing the named Defendants as Representatives for the Defendant Class, and appointing their counsel as counsel for all Defendants, or for interim Defendant class counsel under Rule 23(g), in the Court's discretion.

b. For declaratory relief under the Federal Copyright Act and for an injunction providing: "Defendants shall be and hereby are enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the Copyrighted Video and Photo, whether now in existence or later created, that is owned or controlled by Plaintiffs, including without limitation by using the

Internet, the Instagram embedding API, or any online media distribution system to reproduce (i.e. download) any of Plaintiff Nicklen's Video or Mittermeier's Photo, to distribute (i.e. cause to be displayed) any of Plaintiffs' copyrighted works, or to make any of Plaintiffs' works available for distribution to the public, except pursuant to a lawful license or with the express authority of each Plaintiff. Defendants also shall destroy all copies of Plaintiffs' photos that Defendants have downloaded onto any computer hard drive or server and remove the 'embed code' pointing to the Copyrighted Video or Photos from the internet or Instagram that Defendants have control or ownership interest in."

c.  For Plaintiffs to be awarded either: (i) Plaintiffs' actual damages and Defendants' profits, gains, or advantages of any kind attributable to Defendants' infringement of Plaintiffs' copyrighted works; or (ii) alternatively, statutory damages of up to $30,000.00 per infringement or up to $150,000.00 for each instance of willful infringement of Plaintiffs' Copyrighted works pursuant to 17 U.S.C. § 504.

d.  For Defendants to be required to account for all profits, income, receipts, or other benefits derived by Defendants as a result of their unlawful conduct.

e.  For Plaintiffs' costs and expenses in this action, including all reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1201 et. seq. and pursuant to Rule 23 as the case may be.

f.  For Plaintiffs to be awarded pre-judgment interest from the time of the infringements.

g.  For such other and further relief as the Court may deem just and proper.

Dated: This 24th day of February 2021.

Respectfully submitted,

By: /s/ James Bartolomei Esq.
James Bartolomei Esq.
Duncan Firm, P.A.
Of Counsel
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com

and

Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
347-855-4008
914-992-7135 fax
bryan@hobenlaw.com

and

Robert Kaplan, Esq.
Kaplan, Fox, and Kilsheimer LLP
850 Third Street
New York, New York 10022

Attorneys for Plaintiffs